## JOHNSON v. MILLER ET AL.

1. **Malicious Prosecution:** PROBABLE CAUSE: QUESTION OF LAW OR FACT: ILLUSTRATION. In an action for malicious prosecution, the question whether there was probable cause for the prosecution is a mixed question of law and fact. If there are no facts in dispute, the question is for the court; but, if there is a controversy as to the facts, it should be submitted to the jury. (*Center v. Spring,* 2 Iowa, 393.) And so, where the alleged malicious prosecution was based on a charge of larceny, and the prosecutors knew (1) that the property had been stolen by some person; (2) that by the admissions of the person charged he had the stolen property in his possession soon after the larceny; and (3) that he claimed to have acquired possession of it by purchase from one S., *held* that the first two facts, standing alone, would, as matter of law, have afforded probable cause for instituting the prosecution; but that, when the three facts are considered together, the question whether there was probable cause depended on whether the facts and circumstances, as they were known and understood by the prosecutors, would have warranted an ordinarily prudent and cautious man in believing that the story of the person prosecuted, as to how he acquired the possession of the property, was false;—and that that was a question for the jury.

Johnson v. Miller et al.

2. **Instructions:** SUBMITTING FACT WITHOUT EVIDENCE. It is reversible error to submit to the jury a material question of fact of which there is no evidence.

3. ———: REPETITION NOT REQUIRED. It is not prejudicial error to refuse to give instructions asked, when the substance of them is embodied in other instruc.ions given on the court's own motion.

4. **Malicious Prosecution:** BY VOLUNTARY ASSOCIATION: LIABILITY OF MEMBERS: MALICE. Where a voluntary and unincorporated association for the prosecution of theives caused a person to be prosecuted for larceny, *held* that only such members thereof as participated in the transaction or aided it *with malicious motives* could be held liable for malicious prosecution.

5. **Practice on Appeal:** OBJECTIONS TO EVIDENCE NOT RAISED BELOW. In considering an alleged error of the trial court in the admission of evidence, only such objections to the evidence as were urged below will be considered on appeal.

6. **Malicious Prosecution:** LANGUAGE USED BY DEFENDANT: INTER-PRETATION BY WITNESS. A witness in an action for malicious prosecu-tion testified that one of the defendants said: "If we had our way, we would make short work of him, (plaintiff,) as they did of R." It was understood that R. had been hanged in a grove. *Held* that it was error to allow the witness to state what he supposed the defendant meant by the language,—that being a question for the jury to determine from the facts.

7. ———: PROBABLE CAUSE: ADVICE OF COUNSEL. One who seeks the advice of counsel about the commencement of a criminal prosecution must, in order that he may be protected from liability, on the ground of such advice, in an action for malicious prosecution, make known to counsel a full and fair statement of all the material facts known to him. If he has reasonable ground to believe that facts exist which would tend to exculpate the accused, he must either make further inquiry in relation to such facts, and communicate the information obtained to counsel, or else inform counsel of his belief of their existence, in order that counsel may investigate, and take the information gained into account in forming an opinion. But he is not required to do more than this; and an instruction herein, that defendants were bound to submit to counsel all facts "which they could have ascertained by reasonable diligence," *held* erroneous, notwithstanding 1 Hilliard, Torts, 506, and 4 Wait's Ac. and Def., 335, to the contrary.

*Appeal from Black Hawk District Court.*

FRIDAY, OCTOBER 15:

THIS is an action for the recovery of damages for an

alleged malicious prosecution.  The case has once before been in this court.  See 63 Iowa, 529.  On that appeal the judgment in favor of plaintiff was reversed, and the cause was remanded.  A second trial resulted in a verdict and judgment for plaintiff.  Defendants appeal.

*Horace Boies* and *Hubbard, Clark & Dawley*, for appellants.

*Charles E. Wheeler* and *W. A. Foster*, for appellee.

REED, J.—The plaintiff and all the defendants, except S. D. Potter, reside in Jones county.  Potter is a resident of Greene county.  In June, 1874, Potter purchased about fifty head of calves in Jones county, which he drove to his farm in Greene county.  The defendant Foreman claimed that four of the number belonged to him, and that they had been stolen from him, and he instituted a suit for their recovery before a justice of the peace in Greene county, and, on the trial, he established his right to them.  Potter claimed that he had purchased said calves from plaintiff, and an indictment was subsequently returned by the grand jury, in which he was accused of the larceny of the property; but, upon the trial of the indictment, he was acquitted.  He then instituted this suit, alleging that the defendants had conspired together to institute said prosecution, and that it was commenced maliciously, and without probable cause.

I.   The first point urged by counsel in argument in this court is that, upon the undisputed facts of the transaction, as shown by the evidence given upon the trial, there was probable cause for the institution of the prosecution, and that the verdict is therefore without support.  The question whether there was probable cause for the commencement of the prosecution is what is denominated a mixed question of law and fact.  If there are no facts in dispute, the question is for the court; but, if there is a controversy as to the facts, it should

1. MALICIOUS prosecution: probable cause: question of law or fact: illustration.

be submitted to the jury. Cooley, Torts, 181; *Center v. Spring*, 2 Iowa, 393.

Plaintiff has always admitted that he sold and delivered to Potter seven of the calves, which the latter drove to Greene county. In October, 1874, Foreman visited Potter's place, and, on his return to Jones county, he informed plaintiff that he had found four calves which had been stolen from him in Potter's possession, and that the latter claimed that he had purchased them from plaintiff, and he demanded payment for them. In a few days afterwards he again called upon him, accompanied by Potter, and the latter stated to plaintiff that the four calves which Foreman claimed (and which he had then recovered in the proceedings before the justice) were of the number of those sold him by plaintiff. In neither of these interviews did plaintiff make any question as to the identity of the calves claimed by Foreman with those sold by him to Potter, and in the last interview he settled with the parties, and gave Potter his note for their value. He, in effect, and perhaps in express terms, admitted that he had in possession, and had sold to Potter, the calves which had been stolen from Foreman; but this admission was based on the representations of Potter as to their identity. In both of the interviews he claimed to have purchased them from a man who was a stranger to him, and who stated that his name was Smith. He stated to them that on the day before he sold the calves to Potter he was in the store of Coppees & Derr, in Olive, and that while there he inquired of the proprietors of the store whether they knew of any cattle for sale, and that the man Smith was in the store at the time, and asked him what kind of cattle he desired to buy, and that he replied that he wanted young cattle; and that Smith then stated that he had five calves that he wanted to sell, and that they were on the commons some distance from the town; and that he then went with Smith, accompanied by his brother, Nelson Johnson, who had gone to the store with him, to where the calves were, and there contracted with Smith

for their purchase, and paid him for them; and that Smith agreed to deliver them at a certain pasture, and that he found them in that pasture the next morning, and drove them from there to where he delivered them to Potter. He also stated to them that, when he learned that Foreman was claiming the calves, he went into the neighborhood in which Smith had represented that he lived, and inquired for him, but that he had been unable to find him. At his request, Foreman went with him to the store of Coppees & Derr, and these parties stated to them that plaintiff had a conversation with a stranger in the store about the purchase of cattle, and they detailed the transaction substantially as plaintiff had stated, but were unable to fix the time when the transaction occurred. In subsequent conversations with other of the defendants, plaintiff made the same statement to them, and he informed some of them that, when he drove the calves from the pasture the next morning after the purchase from Smith, Foreman was working in the highway adjoining the pasture, in plain sight of the calves, and not more than thirty or forty rods from them. In some of these conversations he stated that on the same day on which he made the purchase from Smith he went to the town of Stanwood, and had certain business transactions with parties whose names he gave. On subsequent inquiry, however, the defendant learned that those parties claimed that the transactions which plaintiff claimed were had on the day before he sold the calves to Potter did not take place until nearly two months after that. Other facts incident to the transaction were known to defendants when the prosecution was instituted, but they all bear on the question of the reasonableness of the account given by plaintiff as to how he came into possession of the property, and need not be stated.

When the prosecution was commenced, then, the defendants knew (1) that the property had been stolen by some person; (2) that by the plaintiff's own admission he had the stolen property in his possession soon after the larceny; and

(3) that he claimed to have acquired the possession of it by purchase from the man Smith.

That the first two facts, standing alone, would have afforded probable cause for instituting the prosecution, cannot be denied; but it equally apparent that, if plaintiff's story in explanation of his possession of the property is true, no ground for the prosecution existed. The question, then, whether there was probable cause depends upon whether the facts and circumstances of the transaction, as they were known and understood by the defendants, would have warranted an ordinarily prudent and cautious man in the belief that plaintiff's story as to how he acquired the possession was false.

The answer to the question depends, then, upon the conclusion or deduction which should be drawn from the numerous facts and circumstances of the case, and we think it was the province of the jury to draw that conclusion. The court could not say, as a matter of law, that the story was so unreasonable or improbable as to be unworthy of belief. It was properly left to the jury, and we cannot interfere with their finding.

II. As stated above, plaintiff, in effect, admitted, when he made the settlement with Foreman and Potter, that he had sold 2. INSTRUC- to Potter four calves which belonged to Foreman. TIONS: submitting fact After the indictment was returned, however, he, without evidence. in company with his brother, who he claims was present when he made the purchase from Smith, went to Potter's place, and Potter pointed out to them the four calves that Foreman had claimed; and on the trial both he and his brother testified that those were not the calves he had sold to Potter.

The district court gave the following instruction to the jury: " If the jury find that the defendants learned before the prosecution complained of was commenced, by statements which they might reasonably and prudently rely upon and believe, and did rely upon and believe, that Foreman's calves

were stolen, and that, within a *day* or two thereafter, the plaintiff, Johnson, sold and delivered them to Potter, and that, when they were found by Foreman in Potter's herd, Johnson gave his note for their value, and attempted to account for his sale of them to Potter by stating that he bought them from a stranger, who could not be found, and if defendants in like manner found and believed that his statements and details of the purchase claimed to have been made of such stranger were unreasonable, improbable, and contradictory in material matters, *and they had no knowledge of any mistake on plaintiff's part in making such admissions or explanations*, then, as a matter of law, this created a probable cause for a criminal prosecution."

This instruction, except the italicised clause, was given at defendant's request, that clause being added as a modification of the instruction as asked. As modified, the instruction submits to the jury for their determination the question whether defendants had knowledge when the prosecution was commenced that, when plaintiff made the admission that four of the calves which he sold to Potter belonged to Foreman, he was laboring under a mistake as to that fact. If the calves claimed by Foreman were not purchased by Potter from plaintiff, Potter may have known at the time that plaintiff made the admission by mistake, and it would have been entirely proper to submit that question, as to him, to the jury. But plaintiff did not claim that he was laboring under a mistake when he made the admission until after the prosecution was instituted, and there is no evidence tending to show that any of the defendants except Potter had any knowledge or information on the subject until he made the claim. As to them, therefore, the instruction submits to the jury a question on which there was no evidence whatever, and, as there was evidence from which the jury might have found that plaintiff was mistaken when he made the admission, they may have been prejudiced by it. We have so often held that it is reversible error to submit to the jury a mate-

rial question of fact for their determination of which there is no evidence, that it cannot now be necessary to cite the cases in which the holding has been made.

III. The defendants asked the following instructions, which the court refused to give: "(6) In case of larceny, the naked facts that recently stolen property is found in possession of an accused person raises a legal presumption of guilt, and casts upon him the burden of explaining his possession in a satisfactory manner. Until satisfactorily explained, the naked fact of possession of recently stolen property is of itself probable cause for the prosecution of the person possessed thereof.

"(7) By a reasonable explanation is meant a statement of alleged facts which are consistent, rational, and likely to occur in transactions similar to ·that attempted to be explained.

"(8) An explanation of the possession of recently stolen property which is improbable, and unlikely to be true, in the ordinary transactions of men, whereby the possession of personal property is changed from one to another, is not, in law, a reasonable explanation, and no person is bound to accept such explanation, and desist from a prosecution of one who is found to have been in possession of stolen property immediately after the larceny thereof.

The court, however, on its own motion, gave the following instructions:

"(6) To constitute probable cause for criminal prosecution, there must be such reasonable grounds of suspicion, supported by circumstances sufficiently strong in themselves, to warrant an ordinarily cautious man in the belief that the person accused is guilty of the offense charged. The law does not require a certainty that an accused person is guilty before another may proceed against him. It is enough that a felony has been committed, and the circumstances are such as to lead a reasonably prudent and cautious man to believe honestly, and without prejudice, that the accused is guilty thereof.

" (19) In determining the question of probable cause for the prosecution of Johnson, the following principles of crim. inal law must be considered by the jury, namely:    The possession of personal property which has been recently stolen is *prima facie* evidence that the person in whose possession it is so found or traced stole the property, unless he satisfactorily explains his possession, and shows how he came by the property.    If such person attempts to explain his possession of property recently stolen by statements that he bought it of an unknown person, who cannot be found, and the details of the purchase, as he gives them, are unnatural, unreasonable, or improbable, that tends to strengthen, rather than weaken, the presumption of guilt.    If his statements as to such purchase from an unknown person are, in material matters, contradictory and inconsistent—that is, not favorable to innocence; and if, after admitting the possession of property recently stolen, and attempting to account for it by purchase from an unknown person who cannot be found, he then denies such possession altogether—this does not tend to establish his innocence."

Conceding that the instructions asked by the defendants correctly express the law, we are clearly of the opinion that they were not prejudiced by the refusal of the court to give them.    As applicable to this case, the propositions embodied in them are—*First*, that the possession of the stolen property by plaintiff afforded probable cause for the commencement of the prosecution, unless he had given a reasonable explanation of such possession, and, *second*, if the facts stated by him in explanation of his possession of the property were not consistent, or such as might reasonably be expected to occur in such a transaction, the explanation was not reasonable, within the meaning of the law, and defendants were not bound to accept it, or desist from the prosecution. It may be conceded that neither of these propositions is stated, in express terms, in the instructions given, but, in substance, both are given.    In the sixth instruction given,

the jury were told in effect that the prosecution was not without probable cause, if the circumstances were such as to warrant a prudent and cautious man in the belief that plaintiff was guilty; and in the nineteenth they were told that his possession of the property was *prima facie* evidence that he was guilty, unless he had given a reasonable explanation of such possession. The jury could hardly have failed to understand from this that defendants were not bound to desist from the prosecution, unless the explanation given was reasonable, and they were left to determine that question from the circumstances proven.

IV. It was shown that the defendants were members of a voluntary association, the object of which was to assist in

4. MALICIOUS prosecution: by voluntary association: liability of members: malice.

the prosecution and bringing to justice of thieves, and other violators of the law; and there was evidence tending to prove that the association, at a meeting at which all of the defendants were present, resolved to institute a prosecution against plaintiff for the larceny of said property, and that each voted in favor of the proposition; and that a committee was appointed by the association to look up the evidence against plaintiff, and bring the case to the attention of the district attorney; and that the defendants contributed money to aid in the prosecution. It was also proven that E. V. Miller, one of the defendants, and another person, who was a member of the association, laid the case before the district attorney, and made a statement to him of what they claimed were the facts of the transaction, and this was done in obedience to the directions which had been given by the association. The district attorney then brought the case before the grand jury, and the defendants appeared before that body in obedience to subpœnas served on them, and gave testimony. There was no evidence, however, that any of the defendants except E. V. Miller had anything to do with bringing the charge to the attention of the district attorney or grand jury, except that which tends to show that they participated in the action of

the association; and that is the only evidence which tends to prove that there was a common design or purpose by all of the defendants to institute the prosecution. The court gave the following instructions:

"(23) The association not being incorporated, its members are individually liable for its unlawful acts, if any, if they took part therein; and, though the association was organized legally, its powers could have been used for an unlawful purpose.

"(24) You are instructed that if you find from the evidence that the association undertook or aided to prosecute plaintiff upon the charge of stealing the calves of defendant Foreman, and that said prosecution was without probable cause, and with malice, that the defendants in this action are liable for the said acts of said association only so far as they participated therein for that purpose; and before you can hold the defendants, or any of them, liable for the acts or proceedings of said association in relation to the prosecution of plaintiff, you must find that they, either by vote or by voluntary contribution of money, or other means, participated in the prosecution of Johnson; that is, each defendant is liable, if at all, for the part said association took in said prosecution, only for what he did, or intentionally aided in doing, in furtherance of the prosecution of Johnson by said association."

These instructions hold that, if the prosecution was instituted by the association, the individual defendants could be held liable for its action in instituting it only in case they participated in or aided the action. In that respect they are undoubtedly correct. We held this on the former appeal. But malice in the institution of the prosecution is an essential element of the cause of action. To render the individual members of the association liable for the action of the body, they must not only have consented to or aided in it, but, in doing so, they must have acted with malice, that is, they must have become parties consciously to the wrongful

act which was being done. If the proceeding was instituted without probable cause, and any of the defendants knew that it was instituted by the malice of their associates, or if they were themselves moved by unlawful or evil motives in consenting to or aiding it, they were joint wrong-doers, with all the others who were moved by like motives. But some of them may have been influenced only by an honest desire to see the law enforced against one whom they believed to be guilty of a crime, while others may have been moved by malicious motives. If so, the latter are liable, while the others are not. Under the instruction, however, they might be held liable, for they do not make the motive of the individual defendant the test of his liability. In this respect they are erroneous.

V. The court admitted, over the objection of the defendants, evidence of certain statements and declarations said to

**5. PRACTICE on appeal: objections to evidence not raised below.** have been made by individual defendants during the progress of the prosecution. It was urged in argument that the court erred in admitting this evidence against any of the defendants, except those who are alleged to have made the statements. Without now inquiring whether a *prima facie* case of conspiracy had been established so as to make the declarations and acts of each conspirator admissible against the others, we deem it sufficient to say that no such question was raised by the objections made in the court below. The objection, in every case, was that the evidence was incompetent and immaterial; but, in so far as it tended to show the motives or feelings that actuated the person making the statement, it was both competent and material. In admitting the evidence, therefore, the court did not hold that the statements were admissible as against any of the defendants except those who made them.

VI. A witness testified that one of the defendants on one occasion, when speaking of plaintiff and the prosecu-

Johnson v. Miller et al.

6. MALICIOUS
prosecu-
tion: lan-
guage used
by defendant:
interpretation
by witness.
tion, made this statement: "If we had our way we would make short work of him, as they did of Hi Roberts." He was then asked what he understood the defendant to mean by his reference to Hi Roberts. The question was objected to, but the witness was permitted to 'answer it, and he stated that he supposed him to mean that they would hang him by the neck. The objection to the question should have. been sustained. The opinion of the witness as to what was meant by the reference was incompetent. It was understood in the community that Roberts, the person referred to, had been hanged in a certain grove. When the jurors were informed of that fact, they were quite as competent to put a construction on the language as was the witness. It is ordinarily the province of the jury to determine what deduction or conclusion should be drawn from a given state of facts. There are some exceptions to that rule, but this case is not within any of the exceptions.

VII. One of the defenses relied on was that, in doing what they did about the institution of the prosecution, the defendants acted on the advice of the district attorney, to whom they had made a full and fair statement of the facts of the transaction as they had ascertained them, and of the evidence which could be produced to substantiate the charge against the plaintiff, and who had advised them that the facts and evidence afforded ground for the institution of the prosecution. The district court gave the following instruction:

7. ——: prob-
able cause :
advice of
counsel.

"(26) Whether or not the defendants, or some of them, did, before instituting the proceedings, made a full, fair and honest statement to the district attorney, of all the material facts bearing upon the guilt of plaintiff, of which they had knowledge, and which they could have ascertained by reasonable diligence, and whether, in commencing such prosecution, the defendants acted in good faith, upon the advice of said district attorney, are questions of fact to be determined

by you from all of the evidence and circumstances in the case. If you believe from the evidence that none of the defendants made a full, fair and truthful statement of such facts to the district attorney, or that they instituted the criminal proceedings from a fixed determination of their own, rather than from the advice of said district attorney, the advice of the prosecuting attorney would not be a defense in this action."

In our opinion this instruction is erroneous. One who seeks the advice of counsel with reference to the commencement of a criminal prosecution is bound to act in good faith in the matter. Unless he does this, he will not be protected from liability on the ground that he acted upon the advice given him. He is required to make to the counsel a full and fair statement of all of the material facts known to him. If he has a reasonable ground for believing that facts exist which would tend to exculpate the accused from the charge, good faith requires that he shall either make further inquiry with reference to those facts, and communicate the information obtained to the counsel, or that he shall inform him of his belief of their existence, in order that he may investigate with reference to them, and take into account, in forming his opinion, the information attained with reference to them. But he is not required to do more than this. He is not required to institute a blind inquiry to ascertain whether facts exist which would tend to the exculpation of the party accused. But if he honestly believes that he is in possession of all of the material facts, and makes a full and fair statement of those facts to the counsel, and acts in good faith on the advice given him, he ought to be protected. This, it seems to us, should be the rule when the advice of private counsel is relied on. But there are more cogent reasons for applying it where the communication is made to the public prosecutor. In criminal cases, that officer is the representative of the state. He is required, not only to prosecute indictments which are found, but it is his duty to assist in the

investigation of charges against individuals which are brought to the attention of the grand jury. He is by law made the legal adviser of the grand jury. When complaint is made to him that a public offense has been committed, it is his duty to investigate the charge, and, if he deems it a matter of sufficient importance to demand the attention of the grand jury, it is also his duty to have the witnesses subpœnaed and brought before that body; and he has the right to appear, also, and assist in their examination. Neither he nor the grand jury are confined in their investigations to the witnesses named by the complainant, but they have the power to send for and examine any witnesses who they have reason to believe can give any material evidence bearing on the question of the guilt of the accused. We will not, of course, be understood as holding that a party who maliciously makes a groundless charge to the district attorney, and thereby procures the finding of an indictment, is not answerable to the one injured by the proceeding. It would, however, be a very harsh rule, and one calculated to discourage entirely the making of complaints by private individuals, to hold that one who has acted on the advice of the district attorney, given upon a full and fair statement of all the material facts which he knew, or which he had reasonable ground to believe, existed at the time, was not protected by the advice of the attorney, simply because he did not, before making the complaint, learn of other material facts, of the existence of which he might have learned by reasonable inquiry. Yet that is the doctrine of the instruction. The instruction seems to have the support of Hilliard in his work on Torts, (see volume 1, p. 506,) and Waite in his work on Actions and Defenses, (see volume 4, p. 335.) The doctrine of the text is supported, however, by but few of the cases cited in the notes in support of it, and we do not believe it is sound.

The judgment of the district court will be reversed, and the cause remanded.

REVERSED.