# Richmond

COMMONWEALTH OF VIRGINIA, AT THE RELATION OF THE
STATE CORPORATION COMMISSION (THE AMERICAN
EMPLOYERS' INSURANCE COMPANY),
v. JAMES W. SHARP, JR.

January 15, 1931.

Present, Prentis, C. J., and Campbell, Holt, Hudgins and Gregory, JJ.

*Patteson & Muse* and *Wiltshire & Rives,* for the appellants.

*Hardin Harris,* for the appellee.

CAMPBELL, J., delivered the opinion of the court.

The American Employers' Insurance Company, by its duly authorized agent, filed its petition with the State Corporation Commission, praying that a rule issue against James W. Sharp, Jr., to show cause why the certificate of registration theretofore granted him as agent of the plaintiff should not be suspended or revoked in accordance with section 4235 of the Code 1919, as amended by Acts 1928, chapter 264. The rule was duly issued, answer thereto filed by the defendant, and upon the hearing by the Commission, an order was entered dismissing plaintiff's petition. From that order this appeal was allowed.

Upon the calling of the cause the appellee moved the court to dismiss the appeal upon the following grounds:

"(1) The record shows on its face that appellant, the

American Employers' Insurance Company, is not a formal party to the proceedings, and

"(2)   Further shows that this company is not such a 'party in interest' as would entitle it to an appeal under section 3734 of the Code, as amended."

Section 3734 of the Code provides that: "The Commonwealth or any party aggrieved by any final finding, order, or judgment of the Commission shall have, of right,   *   *   * an appeal to the Supreme Court of Appeals   *   *   *."

The plaintiff is a corporation and can only act by and through an agent.  It was essential that an affidavit accompany the petition, and in this case only an agent could make the affidavit.

The question of jurisdiction was not raised before the Commission.  The Commission treated the plaintiff as the party aggrieved, and with the knowledge afforded it by the petition properly issued the rule against the defendant. Under the statute, a party who is granted an appeal, as of right, is one who is aggrieved by the final finding of the Commission.  The term "aggrieved" is broader in its scope than the terms "party in interest," relied on by the defendant, which, as a matter of fact, is not contained in the statute.  Under the broad powers conferred upon the Commission by section 4235 of the Code, which deals with the suspension or revocation of an agent's certificate of registration, the Commission may, "at any time that it may come to its knowledge that any agent has misappropriated any premium   *   *   *" suspend or revoke the certificate of registration.  The suspension or revocation is, of course, based upon due process and after a proper hearing.

The motion to dismiss is overruled.

The facts certified to this court by the Commission are:

"On August 13, 1928, Collier and Hardwicke, Inc., a Virginia corporation, made application in writing to complainant for the establishment of an agency of said insur-

ance company at Richmond, Virginia. The application was made on behalf of Collier and Hardwicke, Inc., by the defendant, who signed the application as secretary and treasurer. In the application it is stated that defendant is the owner of the agency. He was the active head of Collier and Hardwicke, Inc., and the majority stockholder. The application for the agency was granted. The application, filed as exhibit No. 1, and the letters of complainant showing the granting of the application and the establishment of the agency constitute the contract between complainant and Collier and Hardwicke, Inc. Defendant executed all writings on behalf of the agency.

"Under the contract it is provided that the applicant will discharge the duties of agent faithfully, and 'account for all policies, receipts and other property of the corporation for which agency may become responsible and to pay to the corporation whenever and as often as required all monies received on their behalf and to furnish sufficient sureties of such amount as required by the corporation;' and that 'the agent will receive and collect premiums and remit to the corporation on the first day of each month unless contrary instructions be given him.'

"The agency, Collier and Hardwicke, Inc., solicited and obtained insurance for complainant from various parties in its territory. Collier and Hardwicke, Inc., also acted as agent for other insurance companies engaged in a similar business, and maintained an office in the city of Richmond, where it worked certain employees, with the defendant as general manager and active head. The agency solicited insurance, delivered policies, and collected premiums. The premiums so collected on policies issued by complainant were not required by complainant to be deposited by Collier and Hardwicke, Inc., or the defendant, to any special account or trustee, but were deposited to the general bank account of Collier and Hardwicke, Inc. This fact

was known to complainant and to the agent having its Richmond business in charge. In fact, this appears to be the usual course of dealing on the part of insurance agents in handling business of this character.

"Complainant did not require immediate payment of the premiums collected for it, less the commission to which the agency was entitled, but the agency was expected to make remittances 'either on the 20th of the second month or the 1st of the following month.' Payments by the agency and to other insurance carriers for whom it acted were made by check of Collier and Hardwicke, Inc., upon its common fund. In this way a check to complainant might represent the proceeds of premiums collected from policies issued by other companies while payment to other insurance carriers might represent in whole or in part the proceeds of premiums collected on policies issued by complainant.

"The account of complainant against the agency was carried in the corporate name of Collier and Hardwicke, Inc. Statements of the account by complainant against Collier and Hardwicke, Inc., were rendered from month to month showing the amount due from agency to complainant. Various payments were made on account by check of Collier and Hardwicke, Inc. Payments appear to have been satisfactory for some months following the establishment of the agency, but later on, delay and failure occurred in the making of payments.

"On November 1, 1929, Lawford & McKim, Incorporated, located at Baltimore, Maryland, who were general agents for complainant, issued instructions to R. J. Streat, their Richmond manager, directing that he should not accept any further business from the agency of Collier and Hardwicke, Inc., until at least the June and July balances were paid. It does not definitely appear that Mr. Streat told the defendant particularly about this letter. It does appear that after the suspension of the agency in connection with

the negotiations between Mr. Streat and the defendant for the settlement of the account, the defendant consented to collect the unpaid premiums and to help Mr. Streat.

"Upon the suspension of the agency, Collier and Hardwicke, Inc., did not receive any instructions to make no further collections of premiums on the policies already issued. On November 22, 1929, Collier and Hardwicke, Inc., received from A. D. Walthour and Company, Inc., a check for $50.00, which appears to have been duly deposited and collected by Collier and Hardwicke, Inc. This payment was made on account of an adjustment in connection with a previous year's policy issued to the said A. D. Walthour and Company, Inc. This amount, like other premiums, was deposited to the bank account of Collier and Hardwicke, Inc. No payment appears to have been thereafter made by Collier and Hardwicke, Inc., to complainant on the balance due from it.

"Under the course of dealing between complainant and the agency, if a policy holder failed to pay the insurance premium within sixty days after delivery of the policy, the agency was required to cancel the policy, or if not cancelled, the agency became responsible for the amount of the premium and the amount thereof would be charged by complainant to the account against the agency.

"At the time of placing the agency, Mr. Streat, who handled the application on behalf of complainant, knew that Collier and Hardwicke, Inc., had had some difficulties with the Standard Accident Company with reference to the payment of balance due it, but his recollection was that the defendant had pretty much cleared them up except some few items which were in dispute. When payments became slow on the part of the agency, Mr. Streat endeavored to collect the balance on account. At one time he collected $200.00 from the agency on the account; and defendant told him he did not have the money to pay the balance.

"The claim of complainant is, that the defendant, in the year 1929, as its agent, collected premiums on policies issued by it in the amount of $1,342.89, and failed to pay the same to complainant; that the said premiums were trust funds, and that the same had been misappropriated by defendant; that at the time of filing the complaint there was an unpaid balance of substantially the amount claimed to be owing by the agency to complainant."

The charge in the petition of plaintiff is that the defendant collected and misappropriated premiums due to the plaintiff. The penalty sought is the suspension or revocation of defendant's certificate of registration as an insurance agent. The facts relevant to the alleged misappropriation as shown by the record are meagre. Whether the defendant's failure to make settlement is due to an actual misappropriation of funds, insolvency of Collier and Hardwicke, Inc., or otherwise, does not appear. The reason assigned by the Commission, in its opinion, for the dismissal of the rule and petition is: "Under the facts we are of opinion that the relationship of debtor and creditor existed as between the agency and complainant and that the evidence fails to establish misappropriation of funds."

Reduced to its ultimate conception, the contention of plaintiff is that a trust relationship existed between plaintiff and defendant, and when it appears that the agent has written a policy of insurance and by reason thereof has become indebted to the insurer and fails to account for the premium, he then and there is technically guilty of misappropriation of funds.

We will not enter upon a discussion of the distinction between a trust relationship and the relationship of debtor and creditor, as, in our opinion, the issue depends upon the facts shown and a proper construction of section 4235 of the Code. That section, as amended, provides in part that every insurance company, except fraternal beneficiary

associations, orders or societies doing business in this State shall file annually with the State Corporation Commission, on or before the first day of July, and at such other times as they may be appointed, a list of the agents of the said company authorized to solicit insurance for it in the State of Virginia, and each such agent shall be required to secure a certificate of registration from said Commission, for each company proposed to be represented by him; that the Commission may, for good cause, refuse to register such agent, or may, "at any time that it may come to its knowledge that any agent has misappropriated any premium entrusted to him, or has failed to apply said premium as directed by the policy holder or prospective policy holder, or has been guilty of rebating, twisting the policies of other companies, or misrepresenting the provisions, or has violated any of the provisions of section 4222 of the Code of Virginia, revoke or suspend the certificate of registration of·said agent."

As shown in the statement of facts, *supra*, the contract between the parties provides for the manner of settlement and fixes the time when the agent becomes indebted. The statute contemplates more than a mere failure to pay money due by an agent. All of its terms are to be read together. Its design is to protect the insured as well as the insurer. Its effect is to penalize the agent—not to constitute the Commission a clearing house or a collecting agency. The use of the word "misappropriate" is general in its scope. Its meaning is not limited to that appropriation of money which approaches the crime of embezzlement, but extends to a wilful withholding of money due by the agent to his principal. It was, in our opinion, the intention of the legislature to compel a faithful discharge of that duty which an agent owes to his principal. Under the statute, the penalty for a violation of the confidence reposed is not fine or imprisonment, but a revocation or suspension of the certificate of registration. In this respect, the case

at bar is distinguishable from the cases cited by counsel for plaintiff which deal with statutes providing penalties other than suspension or revocation of the certificates of agency, or else deal with a purely trust relationship. No question of trust relationship is herein involved. It is a matter of common knowledge that policies are delivered by agents upon the payment of part cash, and the balance evidenced by the notes of the insured. If the contract of insurance is accepted by the insurer, the agent of course is liable for the premium due. But it does not necessarily follow that if the insured defaults in the payments, and the agent is unable to meet his obligations to the principal by reason of such default, that he is guilty of a breach of trust or is guilty of a misappropriation of funds. In that situation the relation of debtor and creditor does exist, but the agent could not be guilty of misappropriating money which never came into his hands.

The fact that some agents do not always make prompt settlements is known to every insurer doing business in the State. An examination of the State Corporation Commission records discloses that the rate of insurance permissible under the license granted is based in part upon a deduction represented by the computed balance held by the agents, which, under the contract of agency, is not chargeable with interest. Hence, the argument that misappropriation necessarily follows, or that there is a breach of trust when there is default in settlement by the agent, is untenable.

■ While we are unable to concur in the legal conclusion of the Commission that the mere fact that the relation of debtor and creditor exists between the agent and the principal absolves the agent of wrongdoing, we are, under the facts as disclosed by the record, constrained to hold that the Commission, in the exercise of that discretion vested in it by law, has rightly determined that the evidence

adduced does not warrant a suspension or revocation of the agency certificate issued to the defendant.

The order of the State Corporation Commission will therefore be affirmed.

*Affirmed.*