## NATIONAL SURETY CO. v. PAGE.[*]

### No. 3248.

Circuit Court of Appeals, Fourth Circuit.

April 22, 1932.

NORTHCOTT, Circuit Judge, dissenting in part.

H. H. Little and W. R. L. Taylor, both of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

Robert W. Shultice and E. A. Bilisoly, both of Norfolk, Va., for appellee.

Before PARKER, and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

[*]For opinion denying rehearing see 59 F.(2d) 370.

PARKER, Circuit Judge.

This is an appeal in an action at law instituted to recover damages for malicious prosecution. The plaintiff in the court below was one R. Lee Page, former agent of the National Surety Company. The company was defendant. The declaration alleged that the company maliciously and without probable cause instituted a proceeding before the State Corporation Commission of Virginia to revoke the license of Page as an insurance agent authorized to do business in the state; that the proceeding had been dismissed; and that Page had been damaged in his business and reputation, and had suffered damage to his feelings as a result of the institution of the proceedings. A demurrer to the declaration was overruled, and the company then pleaded the general issue, and as special grounds of defense alleged that the proceedings complained of were instituted in good faith and with probable cause, without malice, and under advice of counsel after full disclosure. There was verdict for Page in the sum of $25,000; and from judgment thereon the company has appealed. We need consider only two of the questions presented by the assignments of error: (1) Whether an action for malicious prosecution will lie on account of the institution of proceedings under the Virginia statute to revoke the license of an insurance agent; and (2) whether the evidence in the court below was sufficient to sustain a finding that the proceedings against Page were instituted without probable cause.

The proceedings to revoke the license of Page were instituted under section 4235 of the Code of Virginia as amended, which provides that every insurance company doing business in the state shall file annually with the State Corporation Commission a list of the agents authorized to solicit insurance for it in the state, and that each agent shall be required to secure a certificate of registration from the commission for each company which he proposes to represent. It further provides that the commission may for good cause refuse to register any agent or may "at any time that it may come to its knowledge that any agent has misappropriated any premium entrusted to him, or has failed to apply said premium as directed by the policyholder or prospective policyholder, or has been guilty of rebating, twisting the policies of other companies, of misrepresenting the provisions * * * or has violated any of the provisions of section four thousand two hundred and twenty-two of the Code of Virginia, revoke or suspend the certificate of registration of said agent."

The proceedings complained of were instituted under this statute in January 1929. One Bilbrey, an attorney representing the company, filed with the insurance commissioner of the state an affidavit charging that Page had collected from policyholders of the company premiums amounting to approximately $1,000, which he had failed and refused upon demand to apply as directed by the policyholders by whom same had been paid. At the request of the company the insurance commissioner filed this affidavit with the Corporation Commission, and asked that rule issue directing Page to show cause why his licenses as agent should not be revoked. Page was licensed as agent for six other insurance companies as well as for plaintiff; and the rule as issued required that he show cause why all of these licenses should not be revoked. The rule was issued on February 19, 1929, and on April 9, 1929 a hearing was had, and the rule was dismissed on the ground that the evidence offered did not sustain the charge.

The evidence bearing upon the issue of probable cause for the institution of this proceeding, briefly stated, was as follows: Page had been representing some of the various departments of the company at Norfolk, Va., since as early as 1922, soliciting the writing of bonds of various kinds. He collected the premiums charged for these bonds and remitted same to the company, deducting the commission allowed him. For some premiums he was required to remit on the 20th day of the month following the writing of the bond. On others he was allowed a period of ninety days to collect and make remittance. In May, 1928, Page had not accounted to the company for certain premiums on business done in 1927, and the company was writing him in regard to same. It appears that on June 7, 1928, the amount of the premiums for which he had not accounted was in excess of $1,000, of which amount more than $700 was on business written in 1927. About this time a controversy arose as to whether Page was entitled to commissions on bonds written by the company for the Mortgage Security Corporation and the city of Norfolk; and Page refused to pay over the premiums collected, unless the company would credit him with these commissions. On August 8th he wrote the agent of the company a letter, referring to the recommendation of its state manager that it request the revocation of his license for refusal to pay

over premiums collected, and reiterating his position that he was entitled to commissions on the Mortgage Security Corporation and city of Norfolk business. In December, 1928, the attorney, Bilbrey, and an auditor of the company made demand on Page for the payment of the amount due the company, and the auditor, on going over the books of Page, found that he was due the company approximately ·$2,000. Page again refused to pay over the premiums collected, unless the company would give him credit for the disputed commissions. The company then wrote the attorney under date of December 24th directing that he make complaint to the state commissioner of insurance and ask him to cite Page to account under penalty of having his license revoked.

It appears that the company laid before its attorney all of its correspondence with Page and acquainted him fully with all the facts and circumstances. The attorney then advised the proceeding for revocation of his license, and on December 31, 1928, made affidavit as to Page having collected premiums which he had not remitted to the company. This affidavit was filed with the insurance commissioner by the company's state manager on January 10th. Following this, Page called on the insurance commissioner, explained his claim for the disputed commissions and stated that he was willing to pay the balance, if the company would allow him the amount disputed, and that he was willing to leave the matter in dispute to the arbitration of the commissioner. The commissioner communicated this proposal to the company, and the latter declined same with the statement that it preferred to go ahead with the proceedings which had been inaugurated. Upon suggestion from the commissioner that the affidavit filed was not sufficient as a basis for the proceedings, the attorney filed another affidavit under date of February 14th setting forth that Page had collected premiums which he had refused to apply. The commissioner then asked that the rule issue, and same was issued under date of February 19th.

On March 1, 1929, the company began an action in the court of law and chancery of Norfolk for the recovery of premiums collected by Page and not remitted amounting to $2,392.57. Page pleaded by way of recoupment that he was entitled to the commissions in dispute to which we have referred, and on the trial admitted that the premiums which he had collected and not accounted for amounted to $2,551.84. This action was tried

before a jury on June 7, 1929, and a verdict was returned and judgment entered for the company in the sum of $876.48, which Page paid shortly thereafter. The amount of the verdict was for the amount of the premiums which Page admitted having collected, less the deductions to which he claimed to be entitled.

The controversy over the disputed commissions arose in the following manner: In 1928 the company established a branch office at Norfolk and withdrew from Page authority to write bonds except of certain limited classes. Prior to that time he had written bonds for the Mortgagee Security Corporation and the city of Norfolk of a class that he no longer had authority to write after the establishment of the branch office. In 1928 the Norfolk bond was renewed, and he claimed commissions on the renewal premiums on the ground that it was a continuation of business which he had obtained for the company. The Mortgage Security Corporation opened a branch office in Los Angeles in May, 1928, and desired a large bond from the company, which it obtained. Page claimed that he was entitled to commissions on the premium charged for this, because that corporation was a customer which he had previously obtained for the company, and also because he had conferred with the corporation regarding same, and had obtained permission from an official in the New York office to bind the risk. The company, however, refused to write the bond through Page, and wrote it through its Norfolk office.

The premiums which Page had collected for the company and for which he had not remitted exceeded in amount the commissions which he claimed on account of the Norfolk & Mortgage Security Company bonds. In conversations with the attorney of the company, its auditor, its vice president, and the insurance commissioner, he offered to pay the difference, provided the company would allow him credit for the disputed commissions; but it is clear that the offer to pay was always coupled with this condition. On March 7th, the day on which the rule to show cause was returnable, he tendered the company a check for $653.85 on condition that it be accepted in full settlement; and on the face thereof wrote "for account in full."

There was evidence tending to show that the company was actuated by malice or had an ulterior motive in instituting the prosecution. The letter to the attorney of December 24th instructed him to "camp on Page's trail," and, if necessary, to notify the district

attorney of the situation so that it could get its money, or at least an admission of indebtedness. It also gave the attorney authority to put Page in jail, if he could do so on the basis of the evidence which he had. There was evidence also of communications to customers of the company who had placed business through Page notifying them to deal directly with the company; the inference being that one of the purposes of desiring the revocation of Page's license was to get him out of the way as a competitor of the branch office which had been opened.

■ The first question which arises on the record is presented by the ruling on the demurrer to the declaration. This question, which is fundamental, is whether an action for malicious prosecution may be based upon a proceeding under the Virginia statute to revoke the license of an insurance agent; and we think that it must be answered in the affirmative. While actions for malicious prosecution are not favored by the law (18 R. C. L. 11, and cases cited), and while there is no precedent for the maintenance of an action in a case such as this, the principle upon which the action for malicious prosecution is grounded is clearly applicable. That principle requires that the law afford a remedy for the wrong sustained by one who has been injured in his person, reputation, property, or business by the institution of groundless proceedings in the courts. The groundless and malicious institution of criminal proceedings has always been held to furnish a basis for the action. It is generally held, however, that the institution of civil proceedings, not accompanied by arrest of the person, seizure of property, or other special injury, does not furnish such basis; the reasoning of this line of decisions being that resort to the courts should be open and free to all who have grievances and seek remedies therefor, and that there should be no restraint upon the suitor, through fear of liability resulting from failure in his action, which would keep him from the courts. Added to this is the consideration of public policy that it is in the interest of the state that there be an end of litigation, and that disputes be not tried a second time by the courts under the guise of actions for malicious prosecution. See Peckham v. Union Finance Co. et al., 60 App. D. C. 104, 48 F. (2d) 1016, and cases cited. But the groundless and malicious institution of even civil suits will furnish a basis of action where accompanied by arrest of the person, seizure of property, injury to business, or other special damage. 38 C. J. 391; 18 R. C. L. 15; 1 Cooley on Torts (3d Ed.) 345; Powers v. Houghton, 159 Mich. 372, 123 N. W. 1108, 28 L. R. A. (N. S.) 330 and note, 18 Ann. Cas. 811 and note; Gore v. Condon, 87 Md. 368, 39 A. 1042, 40 L. R. A. 382, 67 Am. St. Rep. 352.

■ Civil proceedings, other than actions, which from their nature are likely to injure reputation or credit, may furnish ground of an action for malicious prosecution. 38 C. J. 391. Thus, the institution of bankruptcy proceedings may furnish ground for the action. Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116; Wilkinson v. Goodfellow-Brooks Shoe Co. (C. C.) 141 F. 218. So also may a proceeding for contempt of court, Tavenner v. Morehead, 41 W. Va. 116, 23 S. E. 673; a proceeding to have a person adjudged insane, Kellogg v. Cochran, 87 Cal. 192, 25 P. 677, 12 L. R. A. 104; Reado v. Halpin, 193 App. Div. 566, 184 N. Y. S. 438; Lockenour v. Sides, 57 Ind. 360, 26 Am. Rep. 58; or a proceeding for the suspension of a police officer, Fulton v. Ingalls, 165 App. Div. 323, 151 N. Y. S. 130; Fulton v. Richmond County Soc., 214 N. Y. 665, 108 N. E. 1094.

■ A proceeding under the Virginia statute to revoke the license of an insurance agent is not, strictly speaking, either a criminal or a civil action. It is an anomalous proceeding, penal in its nature, prosecuted, not for the benefit of an individual, but in the interest of the public. As said in Commonwealth v. Sharp, 155 Va. 714, 156 S. E. 570, 573: "Its design is to protect the insured as well as the insurer. Its effect is to penalize the agent, not to constitute the Commission a clearing house or a collecting agency. * * * It was, in our opinion, the intention of the Legislature to compel a faithful discharge of that duty which an agent owes to his principal. Under the statute, the penalty for a violation of the confidence reposed is not fine or imprisonment, but a revocation or suspension of the certificate of registration."

The institution of such a proceeding against an insurance agent is calculated to injure his reputation and standing in the community and to affect his business injuriously. Like a criminal action it should be instituted, not for the benefit of an individual, but for the protection of the public. If it be instituted maliciously and without probable cause, we see no reason why the party injured thereby should not have redress in an action in damages just as he would in the case of a groundless criminal prosecution.

Coming to the question as to whether verdict should have been directed for defendant on the ground that the evidence failed to show lack of probable cause, we may lay to one side the evidence tending to show that the company acted with malice or from an ulterior motive; for it is well settled that, although malice may be inferred from want of probable cause, want of probable cause may not be inferred from the existence of malice. 38 C. J. 402; Wheeler v. Nesbitt, 24 How. 544, 551, 16 L. Ed. 765; Stacey v. Emery, 97 U. S. 642, 645, 24 L. Ed. 1035; Stewart v. Sonneborn, 98 U. S. 187, 194, 25 L. Ed. 116; Brown v. Selfridge, 224 U. S. 189, 192, 32 S. Ct. 444, 56 L. Ed. 727; Staunton v. Goshorn (C. C. A. 4th) 94 F. 52, 56; Sanders v. Palmer (C. C. A. 2d) 55 F. 217; Munns v. De Nemours, 3 Wash. C. C. 37, Fed. Cas. No. 9,926. The rule is thus stated by this court in Staunton v. Goshorn, supra, as follows: "It was not enough to establish that the prosecution complained of was instigated by the plaintiffs in error, and the proceedings instituted by them with malice and ill will towards defendant in error. It was necessary that the defendant in error should have gone a step further, and shown that there was no probable cause for the inauguration of the prosecution. If plaintiffs in error acted with probable cause, they were not liable in an action for malicious prosecution, it matters not how vindictively they may have acted or what their motives may have been."

And it is equally well settled that where, as here, the facts relied on are undisputed, and only one inference can be drawn from them, the question of the existence of probable cause is for the determination of the court and not for the jury. 18 R. C. L. 58; 38 C. J. 504; Stewart v. Sonneborn, supra; Crescent City Live Stock L. & S. H. Co. v. Butchers' Union Slaughter House & L. S. L. Co., 120 U. S. 141, 149, 7 S. Ct. 472, 30 L. Ed. 614; Staunton v. Goshorn, supra; Sanders v. Palmer, supra; Cragin v. De Pape (C. C. A. 5th) 159 F. 691. The Supreme Court in Stewart v. Sonneborn, thus stated the rule, quoting with approval from Sutton v. Johnstone, 1 T. R. 493: "It is true that what amounts to probable cause is a question of law in a very important sense. In the celebrated case of Sutton v. Johnstone, the rule was thus laid down: 'The question of probable cause is a mixed question of law and of fact. Whether the circumstances alleged to show it probable are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law.' This is the doctrine generally adopted. McCormick v. Sisson, 7 Cow. (N. Y.) 715; Besson v. Southard, 10 N. Y. 236. It is, therefore, generally the duty of the court, when evidence has been given to prove or disprove the existence of probable cause, to submit to the jury its credibility, and what facts it proves, with instructions that the facts found amount to proof of probable cause, or that they do not."

Probable cause for the institution of a criminal prosecution has been defined by the Supreme Court as "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." Wheeler v. Nesbitt, supra. And, where the prosecution complained of is not criminal, but a proceeding such as we have here, the courts should declare that probable cause exists where the uncontradicted evidence shows that the prosecutor in good faith believed that he had a right to institute such proceeding, and had knowledge of such facts as would excite the belief in a reasonable mind that the person against whom the proceeding was prosecuted had been guilty of such conduct as warranted invoking against him the remedy prescribed by statute. In the light of the decision of the Supreme Court of Appeals in Commonwealth v. Sharp, supra, there can be no question as to what constitutes such conduct. It is not necessary that the agent be guilty of embezzlement. It is his duty to apply the premiums collected by him to the purpose for which they have been paid by the policyholder; and, if he willfully fails to do this, i. e., if he fails to do it without just cause or excuse, he is guilty of such violation of the statute as authorizes the revocation of his license. As said by the Supreme Court of Appeals in the Sharp Case, supra: "The use of the word 'misappropriate' is general in its scope. Its meaning is not limited to that appropriation of money which approaches the crime of embezzlement, but extends to a willful withholding of money due by the agent to his principal. It was, in our opinion, the intention of the Legislature to compel a faithful discharge of that duty which an agent owes to his principal."

The question on this branch of the case, then, is narrowed to this: Did the officers of the company who instituted the proceeding against Page have knowledge of such

facts as would lead a reasonable man to believe that Page was willfully withholding money which had been collected for premiums and to which the company was entitled? We think that upon the uncontroverted evidence this question must be answered in the affirmative. It is admitted that he had collected premiums in excess of $2,000 which he had not remitted to the company, and that he had refused to pay this over when demand was made upon him by its representatives. It is true that he was demanding credit for commissions on the business which the company had written for the Mortgage Security Corporation and the city of Norfolk; but the amount of the premiums collected and not remitted exceeded this claim, and Page did not pay even the amount admittedly due. On the contrary, he demanded, as a condition of paying even that, that the company give him credit for the commissions in dispute and accept this balance as payment in full.

The contention is made that Page was ready, willing, and able at all times to pay the difference between the amount of the premiums collected and the amount of his claim; but the record shows conclusively that his offers to pay this difference were always coupled with the condition that he be given credit for the disputed commissions. When he decided to make a tender, which was after the proceeding had been instituted, he tendered a check, across the face of which was written "for account in full." The amount of this difference was a substantial sum. Page in his tender fixed it at $653.85. The jury in the civil case fixed it at $867.48. Page withheld the amount of this difference, and refused to pay it over except upon condition that the company surrender its right to other moneys collected for it on the basis of a claim which it disputed. Can there be any question but that the withholding of this difference, which was a substantial amount of funds belonging to the company, was a willful withholding, in that it was without just cause or excuse, whatever be thought as to the rights of the parties as to the disputed matter? See Mandelin v. Kenneally (C. C. A. 4th) 11 F.(2d) 344; The Lake Gaither (C. C. A. 4th) 40 F.(2d) 31. There was room for grave controversy as to whether Page was right in his claim for the disputed commissions; and, in view of the fact that he had been behind in his settlements and that the commissions were on business which he was not authorized to write, the company may well have thought that his claim was being put forward for the purpose of further

delaying settlement. It is said that he offered to arbitrate the matter, but this offer was not made until after the proceeding complained of had been instituted. But, even if he was right in his contention about the disputed commissions, he had no right to withhold the payment of moneys admittedly due the company above the amount necessary to satisfy his demand, and to refuse to pay same over except upon condition that the company abandon its position and give him the credit demanded. When he did this, he certainly furnished just grounds for belief that he was willfully withholding moneys due the company and had subjected himself to the penalty of the statute.

A further consideration bearing upon the question of probable cause is that, before instituting the proceeding, the company made a full disclosure of the facts to a reputable attorney licensed to practice before the Supreme Court of the United States, the Court of Appeals of the District of Columbia, and the Supreme Court of Tennessee, and acted upon his advice in instituting same. There is no evidence that the advice was not sought and acted upon honestly and in good faith upon a full and fair disclosure; and in such case the rule is well settled that such advice is conclusive on the question of probable cause. 38 C. J. 429; Stewart v. Sonneborn, supra, 98 U. S. 187, 196, 25 L. Ed. 116; Staunton v. Goshorn, supra (C. C. A. 4th) 94 F. 52, 60; King v. Apple River Power Co., 131 Wis. 575, 583, 111 N. W. 668, 120 Am. St. Rep. 1063, 11 Ann. Cas. 951; Kansas & T. Coal Co. v. Galloway, 71 Ark. 351, 74 S. W. 521, 100 Am. St. Rep. 79; Boyer v. Bugher, 19 Wyo. 463, 480, 120 P. 171; Johnson v. Miller, 69 Iowa, 562, 29 N. W. 743, 58 Am. Rep. 231; Forbes v. Hagman, 75 Va. 168. As said by this court in Staunton v. Goshorn, supra: "That the advice of reputable counsel, bona fide sought, and given upon full and fair statement of all the facts and circumstances, and as a consequence of which a prosecution was instituted, will serve as a defense in a suit for malicious prosecution, seems to be too well settled to admit of serious contention."

It is said that, if there was malice, or if the company was acting from an ulterior motive, advice of counsel is no defense. This is a confusion of malice and lack of probable cause. As we have seen above, the existence of probable cause defeats the action, even though malice be proved. Advice of counsel honestly sought upon a full and fair disclosure of the facts establishes probable

cause, and malice in instituting the prosecution has nothing to do with the matter. See Bartlett v. Brown, 6 R. I. 37, 75 Am. Dec. 675; Brady v. Georgia Home Ins. Co., 24 Tex. Civ. App. 464, 59 S. W. 914. The decisions in some jurisdictions base the rule as to advice of counsel on the theory that it rebuts malice; and, of course, in these jurisdictions proof of actual malice would negative the defense. The weight of authority, including that of the Supreme Court of the United States, however, sustains the rule as stated above, viz. that advice of counsel under the conditions stated establishes probable cause. Stewart v. Sonneborn, 98 U. S. 187, 196, 25 L. Ed. 116, and see 38 C. J. 429, and cases cited.

What we have said disposes of the appeal before us; and, as the other questions presented by the assignments of error will probably not arise again, we need not consider them. The judgment appealed from will be reversed and a new trial will be awarded.

Reversed.

NORTHCOTT, Circuit Judge (dissenting).

I regret that I cannot concur in the opinion of the court as to the question of probable cause. My opinion is that the evidence is not so conclusive as to show, as a matter of law, that the appellant had probable cause to bring the proceedings before the Corporation Commission.