**MELVIN et al. v. PENCE**

No. 7968.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1942.

424

Mr. Cornelius H. Doherty, of Washington, D. C., for appellants.

Mr. James R. Murphy, with whom Mr. John P. Labofish, both of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, VINSON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The suit is in the nature of an action for malicious prosecution. The defendants appeal from a judgment for plaintiff for $1250, rendered after trial before a jury.

Plaintiff is a duly licensed private detective.[1] The gist of his complaint is that defendants instituted proceedings before the licensing authorities of the District of Columbia which resulted in their refusal to renew his license, but terminated in his favor on appeal. He asserts defendants acted maliciously and without probable cause, falsely charging him with impersonating a police officer.[2]

The case is before us upon an agreed statement of the evidence. It purports only to set forth the substance of part of the plaintiff's testimony. This was apparently in conflict with other evidence in some respects. But the testimony of the defendants and other witnesses does not appear in the record on appeal.

Defendants urge that no cause of action was made out. The proceedings were entirely administrative, not judicial, and they say such proceedings will not support an action of this character. They complain also that the instructions allowed mental anguish and injury to plaintiff's reputation to be considered in fixing the amount of the damages. We think the judgment should be affirmed.

The case is an outgrowth of the marital troubles of defendant Melvin and his former wife, Mrs. Blanche Melvin. See, Melvin v. Melvin, —— App.D.C. ——, 129 F.2d 39, decided June 8, 1942. Early in August, 1937, she employed plaintiff to follow the movements of her husband. On the morning of August 18, that year, plaintiff accosted the defendants as they came out of an apartment. Defendant Elna N. Smith asked his identity. He replied by showing her his badge. It contained his name, "F. G. Pence," at the top. In a circular portion was an eagle surrounded by the words "Washington Detective Agency." This was his trade name. Plaintiff testified that Elna Smith read the badge; he said nothing to her, but she later asked to see the badge again. He denied telling her who he was or stating he was from the Washington Detective Bureau (a branch of the Metropolitan Police Department) or from the Washington Detective Agency.

On October 26 plaintiff received a letter from the secretary of the Commissioners of the District saying that, upon the recommendation of the Superintendent of Police, his license would not be renewed. The basis for this was two affidavits filed by defendants. They are not in the record, but it discloses they set forth that

---

[1] License is required by D.C.Code (1940) § 47—2341.

[2] This is made a criminal offense by D. C.Code (1940) § 22—1306.

plaintiff had interviewed defendants on August 18 on a domestic matter and had stated he was from the Washington Detective Bureau.

Plaintiff's license expired November 1. He appealed to the Commissioners from the refusal to renew it. A hearing was arranged before the License Denial and Revocation Board for December 15. Defendants testified at the hearing. It resulted favorably to plaintiff, and a license was issued January 5, 1938. Near the end of November, 1937, he received permission to operate pending the disposition of his appeal.

At the close of his case, the plaintiff stated he would base his cause of action entirely on malicious prosecution. Defendants moved then and at the close of all the evidence for a directed verdict. They also moved to set aside the judgment. These motions were denied. All were founded upon the view, now urged on appeal, that the evidence was insufficient to sustain the action for want of a showing that judicial proceedings had been instituted. This is the principal ground urged for reversal.

In view of the evidence, the verdict and the manner in which the case has been presented here, no issue is before us concerning the existence of malice and probable cause. It must be taken as established that the defendants without probable cause [3] charged plaintiff with impersonating a police officer, a criminal offense; made the charge for the purpose of having his license revoked, to the only authority having power to do this, and did so as an immediate consequence of his surveillance of their movements. It must be accepted also as proven that their action caused the administrative proceedings which resulted in the refusal to renew plaintiff's license, but terminated on appeal in his favor. It is clear too that special injury followed from the action, since the license was revoked.

The facts therefore follow the usual pattern of suits for malicious prosecution, successfully maintained, except that the proceedings were administrative, not judicial in character. Defendants make this the principal, in fact the only, issue on the appeal, except for their contentions in respect to the disputed items of damage. In this respect they rely upon the common statement that the tort of malicious prose-cution requires the institution of judicial proceedings as an essential element in the wrong. Auerbach v. Freeman, 1915, 43 App.D.C. 176; Simmons v. Sullivan, 1914, 42 App.D.C. 523; Holmes v. Peters, 1917, 46 App.D.C. 260; Chapman v. Anderson, 1925, 55 App.D.C. 165, 3 F.2d 336; Peckham v. Union Finance Co., 1931, 60 App. D.C. 104, 48 F.2d 1016; Hicks v. Brantley, 1897, 102 Ga. 264, 29 S.E. 459; Stauffacher v. Brother, 1940, 67 S.D. 314, 292 N. W. 432, 128 A.L.R. 925. Plaintiff, on the other hand, grounds his action upon National Surety Co. v. Page, 4 Cir., 1932, 58 F.2d 145, (opinion by Judge Parker), and finds support in Fulton v. Ingalls, 1914, 165 App.Div. 323, 151 N.Y.S. 130, 132, affirmed, Fulton v. Richmond County S. P. C. C., 1915, 214 N.Y. 665, 108 N.E. 1094; Black v. Judelsohn, 1937, 251 App. Div. 559, 296 N.Y.S. 860; Bump v. Betts, 1834, 19 Wend., N.Y., 421; Breznikar v. T. J. Topper Co., 1937, 23 Cal.App.2d 298, 72 P.2d 895; Id., 1941, 46 Cal.App.2d 435, 116 P.2d 176; Hyde v. Southern Grocery Stores, Inc., 1941, 197 S.C. 263, 15 S.E.2d 353; Curley v. Automobile Finance Co., 1941, 343 Pa. 280, 23 A.2d 48.

Malicious prosecution for wrongful institution of administrative proceedings appears to have arisen surprisingly seldom, in view of the vast volume of administrative proceedings during the last half century. National Surety Co. v. Page, supra, seems to be the only case squarely in point, though the other cases supporting plaintiff's view are nearly so. These determined the issue as he says it should be decided.

■ None of the cases cited by defendants involved it. Though all follow the common formula that judicial proceedings must be begun and must have ended in the defendant's favor, each was directed to some other question. Thus, in Auerbach v. Freeman, supra, the court held the action could not be maintained when there had been no prosecution of any kind, but only the making of complaint and an arrest without a warrant. The case therefore is authority merely for the accepted rule that unsuccessful efforts to secure the institution of proceedings, however malicious or unfounded, are not actionable as malicious prosecution. See Harper, Torts (1933) § 268; Prosser, Torts (1941) § 96, at 863-4, and authorities cited. In Peckham v. Union

---

[3] See text, infra, circa note 8.

426

Finance Co., supra [60 App.D.C. 104, 48 F. 2d 1017], a civil action was begun and terminated favorably to the defendant. But the court held this would not sustain a suit for malicious prosecution, notwithstanding malice and want of probable cause, "when there has been no arrest of the person or seizure of the property of the defendant, and no special injuries sustained, which would not necessarily result in all suits prosecuted to recover for like causes of action." This too was in accordance with generally accepted law,[4] and indecisive of the point now presented. So with the other authorities upon which defendants rely.

■ On principle we think the plaintiff is right. The action for malicious prosecution was originally one for prosecution in the technical sense, that is, institution of criminal proceedings. Prosser, Torts (1941) § 96, at 860-1. That is still true in England. Id. § 97, at 886. In this country, however, it has been extended generally to include civil suits, when they result in the special consequences stated in the quotation from Peckham v. Union Finance Co., supra, 60 App.D.C. at page 105, 48 F.2d at page 1017. Civil litigation without these or similar special injuries, though instituted maliciously and without probable cause, lays no foundation for such an action. This limitation, and the broader English one, are thought necessary to maintain free access to the courts by persons with grievances, who otherwise might be restrained from seeking redress through fear of liability in the event of failure. Consequently, by the more general rule, special injury must be shown when the suit relied upon is a civil cause. See Harper, Torts (1933) § 268, notes 5-8; Prosser, Torts (1941) § 97, notes 96–99, 1–17, and authorities cited.

The limitation is sound. When disputes reach the litigious stage, usually some malice is present on both sides. Friendly tort suits are not common. Nor is existence or want of probable cause always easy to determine until the event of the litigation is known. Some margin of safety in asserting rights, though they turn out to be groundless and their assertion accompanied by some degree of ill-will, must be maintained. Otherwise litigation would lead, not to an end of disputing, but to its beginning, and rights violated would go unredressed for fear of the danger of asserting them.

Access to the courts and other tribunals, however, should not be abused. The freedom to use their processes is not absolute. When malice motivates a groundless claim and results in special injury beyond what assertion of rights ordinarily entails, remedy is afforded. The right to litigate is not the right to become a nuisance. When the proceeding has no relation to protection of any right of the suitor or any public right which he reasonably may have a hand in vindicating, the reason for his protection fails and he must respond.

■ We agree with plaintiff that these principles are clearly applicable to administrative proceedings.[5] Much of the jurisdiction formerly residing in the courts has been transferred to administrative tribunals, and much new jurisdiction involving private rights and penal consequences has been vested in them. In a broad sense their creation involves the emergence of a new system of courts, not less significant than the evolution of chancery. The same harmful consequences may flow from the groundless and malicious institution of proceedings in them as does from judicial proceedings similarly begun. When one's livelihood depends upon a public license, it makes little difference to him whether it is taken away by a court or by an administrative body or official. Nor should his right to redress the injury depend upon the technical form of the proceeding by which it is inflicted. The administrative process is also a legal process, and its abuse in the same way with the same injury should receive the same penalty.

We agree, therefore, with the Court of Appeals for the Fourth Circuit that the reason of the rule applies to administrative, as it does to judicial proceedings, and therefore that the rule itself also should apply to them. The proceeding in National Surety Co. v. Page, supra, involved, as does this one, an effort to secure revocation of a license, in that case of an insurance agent. The injury there was less than it is here, since it does not appear that there was any period in which the license was not in force. In holding that the action would lie for instituting administrative proceedings, the court pointed out:

"The institution of such a proceeding against an insurance agent is calculated to

---

[4] Harper, Torts (1933) § 268, notes 3–14; Prosser, Torts (1941) § 97.

[5] Restatement, Torts (1938) § 680, and comment b.

injure his reputation and standing in the community and to affect his business injuriously. Like a criminal action it should be instituted, not for the benefit of an individual, but for the protection of the public. If it be instituted maliciously and without probable cause, we see no reason why the party injured thereby should not have redress in an action in damages just as he would in the case of a groundless criminal prosecution." 58 F.2d at page 148.

In our judgment no other conclusion would be tenable. When private as well as public rights more and more are coming to be determined by administrative proceedings, it would be anomalous to have one rule for them and another for the courts in respect to redress for abuse of their powers and processes.

■ Defendants urge that National Surety Co. v. Page is distinguishable, since Section 4235 of the Virginia Code permits an appeal as a matter of right to the Supreme Court of Appeals from such an order as might have resulted from the proceedings, refusing or revoking a license; whereas no appeal from the similar action of the licensing authorities of the District of Columbia is provided, except under Section 47—2101, D.C.Code (1940), in respect to licenses of employment agencies. There are two answers. First, since we hold that administrative proceedings should fall within the same rule as judicial ones, the absence of a right of appeal to the courts is immaterial. If it has any effect, it would seem to make application of the principle to administrative proceedings all the more necessary. Second, if some judicial element were regarded as essential, it would be supplied by the fact that the Commissioners' action in arbitrarily refusing or revoking a license would be reviewable, if in no other way, by independent suit in equity.[6] The alleged distinction is without substance.

The same result has been reached by the New York cases, cited above, in a slightly different manner. In Fulton v. Ingalls, supra, defendants made charges against the plaintiff, a member of the police department, and these resulted in proceedings before the Police Commissioner which terminated in his favor. The court expressed the opinion the proceeding before this official was a judicial one. If so, it concluded, the action for malicious prosecution would lie. If however the proceeding was not judicial, an action for libel was proper. Consequently it held that a cause of action had been stated. We prefer to keep the record straight concerning the nature and character of the proceeding. But the decision and the later ones following it give support to the view we have taken.

■■ The limitations upon the rule should follow it in the new application. The same reasons which require them when the proceeding is judicial do so when it is administrative. There can be no doubt that institution of these proceedings resulted· in special injury to the plaintiff sufficient to sustain the action. His license was, in effect, revoked. His livelihood depended upon it. For nearly a month he was disabled to carry on his work. It is immaterial that he kept open his office for collection of money previously earned or that he later secured permission to operate pending disposition of the appeal. The latter factor went only to reduce his damages. The lapse in the license not only interrupted his business, but very probably caused harm in other respects. The injury was not slight. Nor was it one essential or conducive to protection of any right of defendants or its assertion. The proceeding in no way involved protection of their interests. It was directed solely to the detriment of plaintiff's right to work. The proceeding therefore falls squarely within the limitations upon the institution of other than criminal prosecutions.

■■ There is some attempt to argue that the defendants did not institute or instigate the proceedings. They do not deny making the charge or its character, or that it was made to the licensing officials or with intent to secure revocation or refusal to renew plaintiff's license. The argument apparently is that all this did not amount to institution or instigation. Clearly it amounted to instigation, as appears from the reason assigned for the refusal and the absence of other cause. Their complaint was the moving force in bringing about the official action and all that followed. Instigation is sufficient, when institution actually follows from it. Harper, Torts (1933) § 269, note 19; Prosser, Torts (1941) § 96, notes 26–37, and authorities cited.

<hr>

6 See Gellhorn, Administrative Law—Cases and Comments (1940), c. 10.

■ ■ We do not agree with defendants that injury to reputation and mental suffering were not proper elements of damage or that there was error in the instructions permitting them to be taken into account. These items are commonly allowable in suits of this character.[7] Injury to reputation is a usual result of groundless charges publicized by litigation. The wrong is closely akin to defamation. The nature of the charge and of the resulting proceedings in this case was such that the good name and fame of the plaintiff were bound to suffer. Necessarily also he must have experienced mental and emotional stress, uncertainty and worry while the proceedings were undetermined, as he testified he did. It was proper for the jury to take this into account. Considering the interruption of his business, the expense of defending against the charge, including attorneys' fees, the injury to business and personal reputation, and the emotional disturbance that were involved, the amount awarded was not excessive and there was no error in respect to the allowance of damages.

■ As the case has been presented to us, perhaps the weakest features are in the elements of malice and want of probable cause, though as has been said these issues are not properly before us.[8] The similarity of plaintiff's trade name, Washington Detective Agency, and the official designation of the detective division of the Police Department, Washington Detective Bureau, coupled with plaintiff's admitted failure to make the difference clear when he was asked by defendants to identify himself, may have led them unwittingly and not unreasonably to conclude that he was a police officer and possibly also, when they discovered he was not, to infer that he was impersonating one. Not all citizens are so acute that they would readily distinguish a private badge and name, such as these, from official ones.

In addition to protection of private interests and the right to vindicate them by legal proceedings, there is also a policy of protecting the public interest and safety, by not discouraging citizens to report apparent crimes through too easy maintenance of suits for malicious prosecution on account of doing so. Cf. Harper, Torts (1933) § 268, at 581. While members of the public should be careful not to make unfounded charges of criminal conduct, it is better that some such charges be made than that persons having knowledge of the commission of crime or reasonable ground for believing it has been committed shall be deterred from reporting it to the proper officials by fear of civil liability for doing so.

■ Considering together this policy and the circumstances under which the defendants originally drew their conclusions concerning the plaintiff, including his failure to put his status beyond question, it may be that defendants were privileged in making the charge originally. But other circumstances were such that their action could have been taken without mistake and purely from motives of revenge or animosity. Enough of the evidence is before us to show this, notwithstanding the attenuated record, and to show therefore that there was a square conflict in the facts concerning the existence of malice and the absence of probable cause. These questions therefore were for the jury and have been resolved against the defendants. In the state of the record and the issues on the appeal, we cannot say there was error in either respect. We may add that the instructions, which are before us, carefully and we think correctly informed the jury concerning these matters. Finally, the trial justice, in a memorandum opinion filed when he denied the motion to set aside the judgment, stated:

"Assuming that defendants' purpose was originally to report the misconduct of a man thought by defendants to be a member of the Metropolitan Police Department, there was evidence that after learning that plaintiff was not an officer of the Police Department, both defendants came to the Police Department and charged plaintiff with misrepresenting himself to them. There was nothing actionable in that, if they had probable cause for so doing. The lack of probable cause was an issue of fact as to which the testimony was in conflict." [38 F.Supp. 759, 760].

In the light of these facts, and since no issue concerning malice or probable cause has been presented upon the appeal, there is no basis for finding error in these respects.

The judgment is affirmed.

---

[7] Harper, Torts (1933) § 271; Prosser, Torts (1941) § 96, at 883-5, § 97, at 892.

[8] See note 3 supra and text.