**Evelyn Mae WILLIAMS, Appellant,**

v.

**CITY STORES COMPANY, Inc., t/a Lansburgh's, and J. H. Marshall & Associates, Inc., Appellees.**

**No. 3209.**

District of Columbia Court of Appeals.

Argued May 27, 1963.

Decided July 12, 1963.

**536**

Melvin M. Feldman, Wheaton, Md., with whom J. Norman Stone, Washington, D. C., was on the brief, for appellant.

Marvin E. Perlis, Washington, D. C., for appellees.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

After an opening statement to the jury by counsel for plaintiff in an action against a department store and its collection agency to recover damages upon three theories— (1) malicious prosecution (wrongful attachment); (2) malicious abuse of process; and (3) fraud—there were directed verdicts for both defendants by the trial judge who ruled that plaintiff had stated no cause of action. In reaching his decision he considered not only the opening statement but also the amended complaint. This appeal ensued.

Marshall, a collection agency employed by Lansburgh's to collect an account due from a customer named "Evelyn Williams" living on Morse Street, sued her for $118. At that time Lansburgh's had two other customers with similar names: "Evelyn V. Williams" residing on Montana Avenue and "Evelyn A. Williams" on Jackson Street. Appellant, although bearing the name "Evelyn Mae Wiiliams," had her store account in her married name, "Mrs. Chevie Williams." Her address was on 63rd Street. Although appellant then actually owed the store $24, she had dealt on a satisfactory credit basis with Lansburgh's for several years.

When Marshall was unsuccessful in securing service at the Morse Street address, it served an alias summons on appellant Williams at the hospital where she was employed. She promptly went to Lansburgh's and was told, "That's not you. Take it (summons and suit papers) back where it came from and give it back to the man who gave it to you. Don't worry about it; you do not have to do anything about it." Appellant thereafter called the attorney whose name appeared on the summons. He told her, "Go to the District and get your name straightened out." Appellant protested and stated she would mail the papers to him. This she did, with an accompanying letter explaining again she was the wrong party "due to name, address and amount" and that Lansburgh's had stated she was the wrong party. Relying upon the assurance of Lansburgh's, appellant thereafter did nothing further in the matter.

Nevertheless, Marshall took a default judgment against "Evelyn Williams" and issued a writ of garnishment attaching appellant's wages, but it did not notify her of this action. When she could not obtain her wages, appellant became "hysterical, nervous, and went crying to Lansburgh's the same afternoon." After a 45-minute wait, she was again told, "You are not the one— don't worry," and "The check has been released." She then called the hospital and found that the check had not been released. As a result of this, appellant became ill. Two days later, on Saturday, accompanied by her husband, she returned to Lansburgh's where she again asked for the check's release and was told that the party handling the matter would not return until Monday. On Monday, when they again went to Lansburgh's, they were sent to the agency office. It was not until the following day that appellant was able to obtain her attached pay.

Through retained counsel appellant had the judgment in the case in which her wages had been attached vacated and the case dismissed with prejudice as to her. She paid her attorney $50 for his services.

The issue is whether appellant's attorney in his opening statement to the jury, and

with all reasonable inferences therefrom, had stated a cause of action which, if proved by competent evidence, would entitle appellant to present her case to the jury.

■ At the beginning we are met with a matter of terminology. "In this jurisdiction, a suit for malicious use of process is comparatively unknown. An action for malicious prosecution is normally the remedy available to a party aggrieved by the wrongful institution of a civil, criminal or administrative proceeding." Nolan v. Allstate Home Equipment Co., D.C.Mun.App., 149 A.2d 426, 428. The only real distinction between these two actions appears to be in name rather than in form. 54 C.J.S. Malicious Prosecution, § 2. The malicious use of process, either civil or criminal, is reached by an action for malicious prosecution. But whether the action, based on a civil proceeding, is termed a suit for malicious use of process or, more properly in this jurisdiction, as one for malicious prosecution, essentially its elements are the same.

■ Appellant's first theory for recovery was for *malicious prosecution*. "In our opinion the greater weight of authority in this country and the better reasoning support the view that no action will lie for the recovery of damages sustained by the prosecution of a civil action with malice, and without probable cause, when there has been no arrest of the person or seizure of the property of the defendant, and no special injury sustained, which would not necessarily result in all suits prosecuted to recover for like causes of action." Peckham v. Union Finance Co., 60 App.D.C. 104, 105, 48 F.2d 1016, 1017. The above rule was reaffirmed in Melvin v. Pence, 76 U.S.App. D.C. 154, 157, 130 F.2d 423, 426, 143 A.L.R. 149, where it was said that "special injury must be shown when the suit relied upon is a civil cause."

■ In his opening statement, counsel for appellant alleged he would show that, although defendants knew or should have known his client was not the "Evelyn Williams" originally sued or intended to be sued by them, a judgment by default against her had been taken and a wrongful attachment on her salary had been issued and served on her employer; that in taking such actions defendants had acted wrongfully, wilfully and maliciously and had caused special injury to her. We are convinced that in the face of these statements in the opening address to the jury, appellant should have been allowed to offer proof thereof before the jury.

■ Appellant's second theory was for *malicious abuse of process*. It has been aptly said that the elements vital to an action for abuse of process are not clearly defined. Italian Star Line v. United States Shipping Board E. F. Corporation, 2nd Cir., 53 F.2d 359, 361, 80 A.L.R. 576. To charge an abuse of process, there must be a perversion of court processes to accomplish some end which the process was not intended by law to achieve, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do. The action will lie even though the process has been validly issued, and regardless of whether there was probable cause for its issuance, or whether a prior proceeding has terminated in favor of the present plaintiff. The action is thus distinguishable from one for malicious prosecution, although the facts which give rise to one action may also support the other. Hall v. Field Enterprises, D.C.Mun.App., 94 A.2d 479, 481; Prosser on Torts, 2d edition, § 100.

Applying these tests to the sufficiency of the opening statement, we find there were adequate allegations not only of the mere use of process against appellant but also of its use for a purpose not intended by law and to achieve a result not lawfully obtainable. Appellant offered to prove that the judgment taken by default was void as to her, which defendants knew or should have known, and that the attachment issued

and served on her employer was done wrongfully, wilfully and maliciously. We believe she should have been afforded opportunity to prove these allegations.

■ Appellant's third theory of recovery was predicated upon *fraud* arising from the fact that after she had informed the store of its mistake in serving suit papers upon her, the store, through its representative, wilfully, wrongfully and fraudulently, advised her that the matter would be corrected and that she need not worry; that lulled thereby into a sense of false security, she took no proper legal action to protect herself from the subsequent default judgment against her and the attachment of her salary; that as a result she was required to retain an attorney at her own expense in order to secure a release of her funds.

Counsel for appellant, in reciting these allegations in his opening statement, at least made out a *prima facie* case. Whether the assurances of the store representative were actually misrepresentations of law or fact is not controlling at this stage of the proceedings, and appellant was entitled to offer her evidence and have the jury decide whether there were deliberate misrepresentations which she relied upon to her special injury. For the court to direct a verdict at this point was premature and error.

■ The law recognizes the right of a trial judge to direct a verdict for defendant upon the facts stated by counsel as constituting plaintiff's case for proof. Oscanyan v. Winchester Repeating Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539; Brown v. District of Columbia, 29 App.D.C. 273, 25 L.R.A.,N.S., 98. However it is only proper when it is clear plaintiff will not make out a case even if all the facts alleged are proved. Hornblower v. George Washington University, 31 App.D.C. 64, 71. As we said in Evans v. Prentice, D.C.Mun.App., 79 A.2d 396, 397 (citing Custer v. Atlantic & Pacific Tea Co., D.C.Mun.App., 43 A.2d 716, 717):

"* * * directing a verdict on an opening statement is 'an extreme measure and trial judges should invoke it most cautiously, for the opening statement is to be construed liberally and favorably to plaintiff's case.' "

We do not intimate that appellant must prevail at trial on the merits, but, considering the amended complaint and the opening statement of her counsel in the light most favorable to her, we find that the motion for a directed verdict should have been overruled and appellant afforded opportunity as plaintiff to carry the burden of substantiating her allegations by competent evidence.

Reversed.