

NUMBER 13-18-00660-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

COLUMBIA VALLEY HEALTHCARE
SYSTEM, L.P. D/B/A VALLEY REGIONAL
MEDICAL CENTER AND LUIS GAITAN,                    Appellants,

v.

MADHAVAN PISHARODI,                                Appellee.

On appeal from the 444th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Chief Justice Contreras**

This accelerated appeal concerns a motion to dismiss brought under the Texas

Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 27.

Appellants, Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical

Center (VRMC) and Luis Gaitan, contend by one issue that the trial court should have granted their motion to dismiss a suit brought by appellee Madhavan Pisharodi. We affirm in part and reverse and remand in part.

## I. BACKGROUND

On February 1, 2016, Pisharodi sued appellants in the 444th District Court for breach of contract, defamation, business disparagement, conspiracy, and negligence. Appellants filed their first TCPA motion to dismiss on July 11, 2016, and a hearing on the motion was held on September 21, 2016. On October 14, 2016, Pisharodi filed an amended petition adding additional detail to his factual allegations; appellants then filed a second TCPA motion to dismiss. Six days later, the trial court granted the first motion to dismiss with respect to Pisharodi's business disparagement, defamation, and conspiracy claims. However, it made no ruling with respect to Pisharodi's breach of contract and negligence claims.

On appeal, we held that the trial court should have also dismissed the breach of contract and negligence claims because Pisharodi failed to produce clear and specific evidence to establish a prima facie case on each essential element of those claims. *Columbia Valley Healthcare Sys., L.P. v. Pisharodi*, No. 13-16-00613-CV, 2017 WL 4416334, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 5, 2017, no pet.) (mem. op.) (*CVHS I*). Following the issuance of our mandate, Pisharodi filed a second amended petition on June 27, 2018, raising defamation, malicious prosecution, and conspiracy claims. Hours later on the same day, the trial court rendered judgment in accordance with our opinion—it granted appellants' second motion to dismiss in its entirety; dismissed "all claims against [appellants]" with prejudice; and provided that appellants "be awarded

attorney's fees, court costs, expenses, and sanctions" from Pisharodi.[1]

Addressing the claims made in Pisharodi's second amended petition, appellants filed a third TCPA motion to dismiss on July 30, 2018. After a hearing on October 10, 2018, the third motion to dismiss was denied by operation of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a) (providing that a TCPA motion to dismiss is denied by operation of law if it is not granted within thirty days after the hearing on the motion). This interlocutory appeal followed. *See id.* § 51.014(a)(12) (permitting interlocutory appeal of order that denies a TCPA motion to dismiss).

## II. DISCUSSION

Appellants argue that the trial court erred by denying their third TCPA motion to dismiss, which concerned the claims made in Pisharodi's second amended petition. At the October 10, 2018 hearing, Pisharodi advised the trial court that he would not be proceeding on his defamation claim.[2] Accordingly, the only live claims are for malicious prosecution and conspiracy.

By four sub-issues, appellants contend: (1) the TCPA applies to the claims; (2) Pisharodi failed to meet his burden to produce clear and specific evidence supporting the claims; (3) the claims are barred by res judicata and collateral estoppel; and (4) appellants are immune from the claims under the Texas Medical Practice Act (TMPA). *See* TEX. OCC. CODE ANN. § 160.010.

---

[1] The June 27, 2018 order did not specify the amount of fees or costs to be awarded to appellants.

[2] The record contains no notice of non-suit or any amended petition withdrawing Pisharodi's defamation claim, and the trial court did not render judgment dismissing that claim. Nevertheless, Pisharodi's counsel was unequivocal at the hearing about his intention to dismiss the defamation claim with prejudice, and Pisharodi makes no argument with respect to the defamation claim on appeal. Therefore, we consider the claim abandoned and we do not address it here. *See* TEX. R. APP. P. 47.1.

## A. Applicable Law and Standard of Review

The TCPA was enacted "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. It protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern—commonly known as "Strategic Lawsuits Against Public Participation" or SLAPPs—by providing a mechanism for summary disposition of such suits. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding).

Under the version of the TCPA applicable here, a defendant seeking dismissal has the initial burden to show that the plaintiff's claim "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association . . . ." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a)). The "exercise of the right of free speech" means "a communication made in connection with a matter of public concern"; a "matter of public concern" includes an issue related to health or safety, or to a service in the marketplace. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3); Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (former TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A), (E)). If the defendant meets this initial burden, the burden then shifts to the plaintiff to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

4

Even if the plaintiff makes this showing, the trial court must still dismiss if the defendant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 2, 2013 Tex. Gen. Laws 2499 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d)).

Our review of a ruling on a TCPA motion to dismiss is de novo. *Entravision Commc'ns Corp. v. Salinas*, 487 S.W.3d 276, 281 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 526 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.).

## B. Applicability of TCPA

In considering the threshold issue of whether the TCPA applies, we observe that the claims made in Pisharodi's second amended petition are based on the same operative facts as the claims made in his original and first amended petitions. Pisharodi alleged the following facts in his original petition:

> This lawsuit arises out of the actions taken by [VRMC] in response to [Pisharodi]'s legitimate concerns regarding a fellow physician's treatment of and communications with two patients. In the context of these two patients, [Pisharodi] was advised by [VRMC]'s Chief of Staff to reduce his concerns into writing. Once it received the writing, however, [VRMC] failed to meaningfully investigate his allegations and instead, started a campaign against [Pisharodi] in conjunction with [Gaitan] to not only discredit him in Cameron County, but also to the Texas Medical Board [TMB] and the [National Practitioner Data Bank (NPDB).[3]] [Gaitan] made false and misleading statements intending to cause harm to [Pisharodi]. These statements were made to peers, hospital staff as well as patient family members.

---

[3] The National Practitioner Data Bank (NPDB) is a federally-mandated "web-based repository of reports containing information on medical malpractice payments and certain adverse actions related to health care practitioners, providers, and suppliers." *The NPDB – About Us*, https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp (last visited Jan. 27, 2020).

[VRMC] initiated a series of peer reviews in violation of the bylaws against [Pisharodi]. [VRMC] cut [Pisharodi]'s access to the patient medical records for which it was conduc[t]ing the peer reviews for. Realizing that it was not going to be successful in discrediting [Pisharodi] with an accurate set of medical records, [VRMC and Gaitan] then altered patient medical records, well after the fact, to justify its imposition of a thirty day suspension of privileges. [VRMC] not only used the altered medical records in its sham peer review proceedings but also made two reports to the [TMB] and transmitted altered medical records to them with the intent that they take enforcement action against [Pisharodi]. [VRMC] also discredited [Pisharodi] by making a report to the [NPDB].

Based on these facts, Pisharodi raised defamation, conspiracy, breach of contract, and negligence claims, among others. In his second amended petition, Pisharodi set forth the following factual allegations to support his malicious prosecution and conspiracy claims:

This lawsuit arises out of the actions taken in retaliation against PISHARODI by VRMC and GAITAN in response to PISHARODI's legitimate concerns regarding a [sic] GAITAN's treatment of multiple patients. When PISHARODI first raised his concerns verbally, VRMC's Chief of Staff told PISHARODI to state his concerns in a formal written complaint. VRMC received PISHARODI's concerns in writing, but failed to investigate the matter. Instead, VRMC and GAITAN began a retaliatory campaign against PISHARODI. VRMC AND GAITAN'S actions following PISHARODI's written complaint were retaliatory, and were designed and calculated to injure PISHARODI and his medical practice while protecting GAITAN from malpractice issues.

In the time period following PISHARODI's written complaint, VRMC reported PISHARODI to the [TMB] on two (2) separate occasions; VRMC conducted three (3) separate sham peer reviews, and at one point, suspended PISHARODI's hospital privileges for thirty-one (31) days. The 31-day suspension of his hospital privileges was maliciously imposed by VRMC in order to surpass the threshold required to enable VRMC to file an adverse report with the [NPDB]. . . .

VRMC falsely alleged that PISHARODI had altered patient medical records, when in fact, VRMC altered the medical records in order to protect GAITAN. . . . The allegation of altered medical records was the basis of VRMC's reporting to the [NPDB] and was, likewise, the basis of VRMC's 31-day suspension imposed against PISHARODI. VRMC had also made the same allegation against PISHARODI to the [TMB], but that complaint was ultimately dismissed.

6

In *CVHS I*, we concluded that Pisharodi's breach of contract and negligence claims were based on, relate to, or are in response to appellants' exercise of the right of free speech. 2017 WL 4416334, at *2. We agreed with appellants that "any statements made to the TMB or the [NPDB] and any statements made during the peer review process constitute protected free speech" because "the provision of medical services by a health care professional constitutes a matter of public concern." *Id.* (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015)). Pisharodi has not offered any reason why a different result should hold with respect to his malicious prosecution and conspiracy claims, which arise out of largely the same facts.[4] We conclude that those claims are also based on, relate to, or are in response to appellants' exercise of the right of free speech. Therefore, the TCPA applies. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019); *CVHS I*, 2017 WL 4416334, at *2.

## C. Prima Facie Case

Next, we must determine whether Pisharodi met his burden to establish by "clear and specific evidence a prima facie case for each essential element" of his malicious prosecution and conspiracy claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). "Clear and specific evidence" must be more than "general allegations that merely recite the elements of a cause of action"; instead, "a plaintiff must provide enough detail to show the factual basis for its claim." *In re Lipsky*, 460 S.W.3d at 590–91.

---

[4] In fact, as noted, the trial court previously ruled on October 20, 2016 (and again on June 27, 2018, after we handed down *CVHS I*), that defamation and conspiracy claims based on these facts should be dismissed under the TCPA. Pisharodi re-pleaded the defamation and conspiracy claims in his second amended petition. Appellants do not contend that the trial court was bound, under res judicata or other principles, to dismiss the re-pleaded claims. Appellants also do not assert that Pisharodi waived the right to re-plead these claims by failing to appeal the trial court's October 20, 2016 dismissal order.

### 1.    Affidavit

To support his claims, Pisharodi relies on his 24-page affidavit detailing two incidents in 2011 regarding appellant Gaitan and the actions VRMC allegedly took in response thereto.[5]

On May 19, 2011, patient T.F. suffered a pulmonary embolism after receiving a pain medication injection at Pisharodi's office. T.F. was admitted to VRMC where Gaitan began treating her. According to Pisharodi, Gaitan informed T.F.'s family members that the patient's condition "was so bad that she was a candidate for termination of life support." Pisharodi disagreed with that prognosis; but Gaitan advised the family members to "dismiss [Pisharodi] from the care" so that the termination of life support could proceed, and the family members did so. As set forth in the affidavit, Pisharodi then asked VRMC's CEO to "arrange an ethics committee meeting" regarding Gaitan's conduct, but the CEO declined, stating that there was no need for such a meeting. According to Pisharodi, despite being taken off life support, and despite the administration of hourly Morphine injections "to knock out her breathing center," T.F.'s condition actually improved. The patient later died two or three weeks later, but Pisharodi claimed that this was because of infections she acquired at VRMC, not because of "the complications related to her brain activity."

Pisharodi next explained that another patient, Y.P., was admitted to VRMC on August 6, 2011, with encephalitis and myoclonic seizures. According to the affidavit,

---

[5] The affidavit was filed with Pisharodi's response to appellants' third TCPA motion to dismiss on October 10, 2018, the same day as the hearing on the motion. Appellants objected to the affidavit orally at the hearing, and later in writing, arguing that the affidavit was conclusory and speculative and was not based on Pisharodi's personal knowledge. The trial court did not rule on the objections and appellants do not take issue with that failure on appeal.

Gaitan diagnosed Y.P. with "psychiatric illness" and suggested that she divorce her husband to reduce stress. Y.P.'s husband sought a second opinion from Pisharodi, who determined that the patient had a brain infection and should be transferred to intensive care. Pisharodi claimed that, without his intervention in the case, Y.P. would have suffered death or serious brain damage as a result of the infection. According to Pisharodi, Gaitan later told hospital staff that Y.P.'s infection was "very dangerous and contagious" and he falsely told Y.P.'s family members that Pisharodi was not qualified to do a brain biopsy. Pisharodi asserts that he is, in fact, qualified to do a brain biopsy; but none was necessary in Y.P.'s case because she had already started improving due to treatment rendered by Pisharodi.

Based on these two incidents, Pisharodi made a verbal ethics complaint against Gaitan to VRMC's Chief of Staff. According to Pisharodi, VRMC "[i]mmediately" retaliated by "sen[ding] the medical records of another patient of mine, [W.B.], for external peer review against me"; this was done without Pisharodi's knowledge, which was contrary to standard procedure. The hospital's Chief of Staff advised Pisharodi to file written complaints regarding Gaitan's conduct, and Pisharodi did so in late August of 2011. After filing the written complaints, Pisharodi was directed to attend a meeting of the hospital's Medical Executive Committee. He believed he was being summoned to provide more details about Gaitan's conduct; but instead, the committee "ignore[d]" his complaints about Gaitan and "start[ed] interrogating [Pisharodi]" about his own conduct instead. He claims members of the committee "attacked" him and asked questions about issues he "was totally unprepared to discuss," in alleged contravention of the VRMC bylaws.

Pisharodi stated in his affidavit: "The first thing VRMC did was to alter the date of

9

admission of [Y.P.] from 8/6/2011 to 8/8/2011." He stated that the "only possible explanation" for altering the admission date would be to "exclude" Gaitan's August 7, 2011 consultation, in which he diagnosed Y.P. with a mere "psychiatric illness," from the admissions records. He claims that computer records were altered but handwritten notes show that the actual admission date was August 6. Pisharodi further claims that VRMC "mislabeled" him as a "neurologist" rather than a "neurosurgeon" in order to "mislead" the external peer review physician.[6] According to Pisharodi, the external peer review physician "came back with a glorious appreciation of the patient care based on what I did to the patient." He claims that VRMC "falsely interpreted" the findings of the external peer review physician to mean that Gaitan did nothing wrong; and this gave the "false impression" that Pisharodi's complaint against Gaitan was baseless.

As to the incident regarding T.F., Pisharodi's affidavit tells a similar story. Pisharodi claims that there were two external peer reviews conducted regarding the care of this patient; but only Pisharodi's care was examined, not Gaitan's. Although the second peer review was "supposed to" concern Gaitan's care, the first line of the report stated that Pisharodi's care is "specifically under review"; Pisharodi argued that this is "circumstantial evidence that somebody from VRMC was verbally communicating with the external peer reviewer on what his or her report should say." According to Pisharodi, VRMC's Chief of Staff informed the Medical Executive Committee on October 18, 2011, that there were peer reviews pending against Pisharodi and Gaitan, and that the external peer review

---

[6] Pisharodi noted that encephalitis is "not diagnosed by a neurosurgeon like me and should have been diagnosed by a neurologist like [Gaitan]." He claims VRMC "mislabeled" him as a neurologist so as to avoid mentioning Gaitan's involvement in Y.P.'s case.

10

process did not find anything wrong with Gaitan's care. Pisharodi claims that this result came about only because Gaitan's care "was never investigated."

The affidavit states that Pisharodi later received a "sanction letter" from the Chief of Staff instructing him to complete a continuing medical education (CME) course within ninety days. Pisharodi's lawyer wrote to VRMC asserting that the CME requirement was not an approved sanction under the bylaws and that the "episode would be considered abandoned" if VRMC did not justify its actions. VRMC did not reply, so Pisharodi and his attorney wrote further letters saying they considered the episode abandoned.

According to Pisharodi, in retaliation for his refusal to complete the CME course and "[t]hreatened by [his] ownership in Brownsville Doctors Hospital," VRMC initiated another peer review against him in June 2012. He claims that VRMC "combine[d] portions of the two external peer reviews on [T.F.] and present[ed] it to me as one peer review." He claims VRMC violated its bylaws by initiating the peer review without providing details to him regarding the alleged misconduct. He further alleged that VRMC appointed an ad hoc committee to investigate him and that he was only allowed to see a portion of the relevant medical records to prepare his defense before that committee. At a meeting of the ad hoc committee on June 11, 2012, Pisharodi was presented with a page from T.F.'s medical records containing a date stamp of June 1, 2011. According to Pisharodi, the procedure described in that document actually took place at his office on May 16, 2011. Pisharodi asserts that the ad hoc committee members "attacked" him for this and accused him of "backdat[ing]" and "falsif[ying]" the document. He alleges that VRMC "intentionally or erroneously stamped this 5/16/2011 note on 6/1/2011" and this discrepancy was "used" in 2014 to suspend him from admitting privileges at the hospital and, in turn, to report him

11

to the TMB and NPDB.[7]

Pisharodi stated in his affidavit that VRMC filed a second complaint with the TMB in December of 2014, principally complaining of "an alleged backdating of a medical record by [Pisharodi] with regards to [T.F.]." He stated that the TMB dismissed the two complaints concerning him on June 30, 2015, and June 17, 2016, respectively.

Finally, Pisharodi acknowledged in his affidavit that he filed suit in federal court based on these facts in January of 2014. Most of the claims were dismissed in August of 2014 for failure to state a cause of action.[8] Pisharodi asserted in his affidavit, however, that the federal court's order of dismissal "only related to matters that took place before January of 2014," and that his malicious prosecution claim "did not accrue until after [the complaints against him were] dismissed by the [TMB] on June 17, 2016."[9]

---

[7] Pisharodi states he later "realized" that VRMC "routinely used their 'inefficient stamping' methods to protect its 'friends' and attack its enemies."

[8] A copy of the federal court's August 8, 2014 order was attached to appellants' third TCPA motion to dismiss. It shows that the federal court granted VRMC's motion to dismiss Pisharodi's claims for declaratory judgment, Sherman Act violations, fraud, breach of fiduciary duty, business disparagement, tortious interference with an existing contract, civil conspiracy, defamation, negligent misrepresentation, intentional infliction of emotional distress, and negligent hiring. The federal court denied VRMC's motion to dismiss Pisharodi's breach of contract claim.

[9] Pisharodi also provided live testimony at the October 10, 2018 hearing. Appellants objected to the live testimony but the trial court implicitly denied the objection by allowing the testimony to proceed. As part of their second sub-issue, appellants contend that we may not consider the live testimony in our analysis because "[t]he TCPA does not contemplate consideration of live testimony."

The applicable version of the TCPA provides that "[i]n determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 963 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)). There is a split of authority in the appellate courts regarding whether live testimony is permitted by this language. *Compare Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied) ("In addition to consideration of the pleadings and affidavits, a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence.") *and Nguyen v. Dangelas ex rel. K.D.*, No. 01-19-00046-CV, 2019 WL 5996381, at *3 (Tex. App.—Houston [1st Dist.] Nov. 14, 2019, no pet. h.) (mem. op.) (same) *with Quintanilla v. West*, 534 S.W.3d 34, 42 (Tex. App.—San Antonio 2017) (stating that "[t]he trial court does not hear live testimony" in considering a TCPA motion to dismiss), *rev'd on other grounds*, 573 S.W.3d 237 (Tex. 2019) *and Pena v. Perel*, 417 S.W.3d 552, 556 (Tex. App.—El Paso 2013, no pet) (same).

12

### 2. Malicious Prosecution

To prove malicious prosecution of a civil claim, a plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff, (2) by or at the insistence of the defendant, (3) malice in the commencement of the proceeding, (4) lack of probable cause for the proceeding, (5) termination of the proceeding in plaintiff's favor, and (6) special damages. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996); *S. Tex. Freightliner, Inc. v. Muniz*, 288 S.W.3d 123, 132 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied).

Appellants argue that Pisharodi failed to meet his burden as to the first element of his malicious prosecution claim—initiation of a civil proceeding against the plaintiff—because "the peer review is arguably not a civil proceeding as contemplated by the statute." But courts in other states have found that a malicious prosecution action may be based on the defendant's initiation of administrative proceedings against the plaintiff. *See Hardy v. Vial*, 48 Cal. 2d 577, 581 (1957) ("[A]n action for malicious prosecution may be founded upon the institution of a proceeding before an administrative agency."); *Rainier's Dairies v. Raritan Valley Farms*, 117 A.2d 889, 895–96 (N.J. 1955) ("[U]nder certain circumstances a malicious prosecution [claim] may be predicated upon the institution of other than a judicial action, at least where such proceedings are adjudicatory in nature and may adversely affect legally protected interests."); *see also Hillside Assocs. v. Stravato*, 642 A.2d 664, 668 (R.I. 1994) (same); *Carver v. Lykes*, 262 N.C. 345, 352

---

We assume for purposes of this opinion, but do not decide, that the live testimony was impermissible under the TCPA, and we do not consider it in our analysis of the motion to dismiss.

(1964) (same).[10] Appellants cite no authority to the contrary. We conclude that Pisharodi has produced clear and specific evidence that appellants instituted civil proceedings against him.

Appellants further contend that, even if the peer reviews could be considered civil proceedings, they were not terminated in Pisharodi's favor. *See Tex. Beef Cattle Co.*, 921 S.W.2d at 207 (elements of malicious prosecution). Appellants argue that the peer reviews resulted only in a "recommendation" to the TMB and that "any action with regard to [Pisharodi]'s record with the [TMB] would be determined by the [TMB] itself—not the hospital's peer review committee." But appellants cite no authority establishing that, to sustain a malicious prosecution claim, the "termination" in the plaintiff's favor must have been directly effectuated by the defendant. Instead, under the applicable law, it suffices to show that the proceeding, though initiated or continued by the defendant, was terminated in the plaintiff's favor—no matter which entity actually carried out the termination. *See id.* Here, it is undisputed that the peer reviews initiated by appellants resulted in proceedings before the TMB—and the TMB, in turn, disposed of those proceedings in Pisharodi's favor. We conclude that Pisharodi has produced clear and

---

[10] Long ago, the federal court of appeals for the District of Columbia Circuit explained why malicious prosecution suits may be based on administrative proceedings:

> Much of the jurisdiction formerly residing in the courts has been transferred to administrative tribunals, and much new jurisdiction involving private rights and penal consequences has been vested in them. . . . The same harmful consequences may flow from the groundless and malicious institution of proceedings in them as does from judicial proceedings similarly begun. When one's livelihood depends upon a public license, it makes little difference to him whether it is taken away by a court or by an administrative body or official. Nor should his right to redress the injury depend upon the technical form of the proceeding by which it is inflicted. The administrative process is also a legal process, and its abuse in the same way with the same injury should receive the same penalty.

*Melvin v. Pence*, 130 F.2d 423, 426 (D.C. Cir. 1942).

14

specific evidence of this element.

Next, appellants argue there is no evidence that the peer reviews were initiated without probable cause or with malice. *See id.* In the context of malicious criminal prosecution claims, "probable cause" means "such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983). Malice has been defined as "ill will or evil motive, or such gross indifference or reckless disregard for the rights of others as to amount to a knowing, unreasonable, wanton, and willful act." *Luce v. Interstate Adjusters, Inc.,* 26 S.W.3d 561, 566 (Tex. App.—Dallas 2000, no pet.). "To establish malice, it is not necessary to prove that the defendant acted with personal spite or ill will; it is sufficient to show the defendant committed wrongful acts in reckless disregard of another's rights and with indifference as to whether the party would be injured." *Id.* Malice may be inferred from a lack of probable cause, but a lack of probable cause may not be inferred from malice. *Id.*

In malicious prosecution claims, there is a presumption that the defendant acted in good faith in reporting an apparent subversion of the law. *S. Tex. Freightliner, Inc.*, 288 S.W.3d at 133–34 (citing *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 794 (Tex. 2006)). The plaintiff bears the burden to rebut this presumption "by producing evidence that the defendant initiated a prosecution on the basis of information or motives that do not support a reasonable belief that the claimant was guilty of the charged crime." *Id.* "Evidence of motives that undermine the presumption of reasonable belief include prior bad relations, preexisting debt, racial animus, or any private motivation to harm." *Id.*

15

Appellants claim that Pisharodi has produced no evidence from which it could be inferred that appellants acted with malice in initiating the peer reviews. In particular, appellants claim there is no evidence that VRMC "withheld any material information, or knowingly provided false information, to any regulatory authority or administrative body." However, Pisharodi stated in his affidavit that VRMC altered Y.P.'s medical records in order to "exclude" evidence that Gaitan misdiagnosed Y.P. from the peer review proceedings. He also claimed that VRMC mischaracterized his medical specialty, again in order to conceal Gaitan's involvement in Y.P.'s treatment. Pisharodi further suggested that VRMC harbored animus against him because he was a part owner of a competing hospital and because he refused to take a CME course as directed. His theory is that, by quashing his legitimate complaints about Gaitan's conduct and initiating an investigation into his own conduct, VRMC sought to punish him while protecting Gaitan and its own reputation. This theory is supported by the facts as set forth in Pisharodi's affidavit. Moreover, although it is Pisharodi's burden to show lack of probable cause, it is noteworthy that appellants have directed us to nothing in the record establishing that Pisharodi's professional conduct was actually deficient in any way with respect to the two patients at issue. In other words, based on the record before us, the facts and circumstances known to VRMC at the time the peer reviews were initiated could not have "excite[d] belief in a reasonable mind" that Pisharodi's professional conduct warranted peer review, a suspension of his admitting privileges, or reports to the TMB and NPDB. *See Akin*, 661 S.W.2d at 921.

For the foregoing reasons, we conclude that there is clear and specific evidence that the peer reviews and reports were initiated without probable cause. And because

malice may be inferred from lack of probable cause, *see Luce*, 26 S.W.3d at 566, we further conclude that the evidence of malice is sufficient to avoid dismissal under the TCPA.

Finally, appellants dispute that Pisharodi suffered special damages. *See Tex. Beef Cattle Co.*, 921 S.W.2d at 207 (elements of malicious prosecution). To show special damages, the plaintiff must have suffered more than just the "mere filing of a lawsuit" or "ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees." *Id.* at 208–09. Instead, "[t]here must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Id.* at 209 (citing *Sharif-Munir-Davidson Dev. Corp. v. Bell*, 788 S.W.2d 427, 430 (Tex. App.—Dallas 1990, writ denied)). Pisharodi contends that he suffered special damages because his admitting privileges at VRMC were suspended for thirty-one days as a result of the peer reviews that appellants initiated. We agree. Pisharodi alleged in his affidavit that the suspension was set at thirty-one days specifically because that length of suspension required reports to be made to TMB and NPDB; he claims that, had the suspension been for thirty days or fewer, VRMC would not have been empowered to make such reports. In any event, the suspension of Pisharodi's admitting privileges does not constitute "ordinary losses" incident to defending an administrative proceeding such as the peer reviews undertaken in this case. Instead, it constitutes interference with a property right, akin to an injunction, and therefore satisfies the special damages requirement. *See id.*

We conclude that Pisharodi produced clear and specific evidence establishing a prima facie case for all elements of his malicious prosecution claim. Therefore, appellants'

motion to dismiss this claim under the TCPA was properly denied.

### 4.    Conspiracy

Civil conspiracy requires (1) two or more persons who agree upon an object, (2) a meeting of minds on the object to be accomplished, and (3) one or more overt, unlawful acts committed in furtherance of the conspiracy, (4) which results in damages. *Hicks*, 473 S.W.3d at 532.

With respect to his conspiracy claim, Pisharodi's live petition alleged as follows:

> The conduct of VRMC and GAITAN alleged within this Second Amended Petition could not have occurred at the hands of one individual or entity. For example, the removal and alteration of medical records—which required different security clearances—indicates multiple actors involved in the wrongful actions taken against PISHARODI. Because PISHARODI has been prevented from obtaining the identities of these additional actors due to the automatic stay arising from Defendant's [TCPA] motion to dismiss, the additional co-conspirators acting against PISHARODI will be named after a reasonable opportunity has been given for Plaintiff to conduct discovery.

Appellants contend that there is no clear and specific evidence of a prima facie conspiracy case because Pisharodi's affidavit did not identify any individuals that allegedly conspired with VRMC to initiate the complained-of peer reviews.[11] We agree. Although Pisharodi argues that "a conspiracy's participants may not know each other's identity, and its membership may change," he does not point to any "clear and specific evidence" in his affidavit or elsewhere in the record establishing that Gaitan, or any other individual or entity, actually agreed to accomplish any object with VRMC; nor does he complain of the trial court's apparent decision not to permit discovery as provided in the

---

[11] Appellants also argue that the conspiracy claim fails because there is no underlying tort. However, we have held that the evidence of malicious prosecution was enough to survive the TCPA motion to dismiss.  Therefore, we reject this argument.

18

TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(b). Because Pisharodi failed to produce clear and specific evidence establishing a prima facie case as to conspiracy, we conclude the trial court erred in denying appellants' motion to dismiss this claim under the TCPA.

## D.    Defenses

We must next consider whether appellants established by a preponderance of the evidence each essential element of a valid defense to the malicious prosecution claim. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 2, 2013 Tex. Gen. Laws 2499 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d)).

By part of their third sub-issue, appellants contend that the malicious prosecution claim is barred by collateral estoppel.[12] A party asserting collateral estoppel must establish that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). The doctrine "applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

Appellants argue that the ruling in Pisharodi's 2014 federal suit precludes his malicious prosecution claim. As noted, the federal district court dismissed all but one of the claims raised by Pisharodi based on largely the same facts as the instant suit. But

---

[12] By this sub-issue, appellants also assert the defense of res judicata as to Pisharodi's defamation and conspiracy claims. We need not address that defense because the defamation claim was abandoned and the conspiracy claim was not supported by clear and specific evidence of a prima facie case. *See* TEX. R. APP. P. 47.1.

19

malicious prosecution was not among those claims. Moreover, the federal court's order states that the dismissals were based on Federal Rules of Civil Procedure 12(b)(6) and 9(b), not the TCPA. Thus, the legal issues before that court were arguably not the same as that considered here. *Compare* FED. R. CIV. P. 12(b)(6) (providing that a party may move to dismiss an action for "failure to state a claim upon which relief can be granted") *and* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") *with* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (requiring plaintiff to show "by clear and specific evidence a prima facie case for each essential element of the claim in question").

More importantly, the facts involved here are not precisely the same as those considered in the federal suit. The federal suit was filed in January of 2014; the majority of the claims were dismissed on August 8 of that year; and final judgment was rendered in January of 2015. But Pisharodi's malicious prosecution claim depends on the termination in his favor of the two TMC complaints, and those terminations occurred in June of 2015 and June of 2016. Therefore, as Pisharodi asserts, collateral estoppel does not apply to his malicious prosecution claim because that claim accrued after the federal court made its ruling.[13] We overrule appellants' third sub-issue.

By their fourth sub-issue, appellants claim that they are immune from the malicious

---

[13] Pisharodi also argues that collateral estoppel may not be raised as a "valid defense" to support a TCPA motion to dismiss because "non speech defenses (such as limitations or accord and satisfaction)" do not advance the statutory purpose. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 2, sec. 27.005(d), 2013 Tex. Gen. Laws 2499 (amended 2019). We assume for purposes of this opinion that any cognizable legal defense, including collateral estoppel, may be raised as a "valid defense" under the TCPA.

20

prosecution claim under § 160.010(b) and (c) of the TMPA, which provide as follows:

> (b)    A cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity from any act, statement, determination or recommendation made, or act reported, *without malice*, in the course of medical peer review.

> (c)    A person, medical peer review committee, or health care entity that, *without malice*, participates in medical peer review or furnishes records, information, or assistance to a medical peer review committee or the board is immune from any civil liability arising from that act.

TEX. OCC. CODE ANN. § 160.010 (emphasis added). We have already concluded, however, that Pisharodi has produced clear and specific evidence of malice. Appellants have not established by a preponderance of the evidence each essential element of any defense based on the TMPA. *See id.* We overrule appellants' fourth sub-issue.

### III. CONCLUSION

We affirm that portion of the judgment denying appellants' third TCPA motion to dismiss as it relates to Pisharodi's malicious prosecution claim. However, the motion should have been granted with respect to Pisharodi's civil conspiracy claim; therefore, we reverse that portion of the judgment concerning the conspiracy claim. The cause is remanded for further proceedings consistent with this opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed the 30th
day of January, 2020.

21